# IN THE MATTER OF STRAUSS.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 186. Argued March 1, 1905.—Decided April 3, 1905.

Words in the Constitution of the United States do not ordinarily receive a narrow and contracted meaning, but are presumed to have been used in a broad sense with a view of covering all contingencies.

The word "charged" in Art. IV, § 2, Subd. 2, was used in its broad signification to cover any proceeding which a State might see fit to adopt for a formal accusation against an alleged criminal.

Extradition, or rendition, is but one step in securing the presence of the accused in the court in which he may be tried and in no manner determines the question of guilt, and while courts will always endeavor to prevent any wrong in the extradition of a person to answer a charge of crime ignorantly or wantonly made, the possibility cannot always be guarded against and the process of extradition must not be so burdened as to make it practically valueless.

The extradition of an alleged fugitive from justice against whom a charge of the crime of securing property by false pretences has been made and is pending before a justice of the peace of Ohio, having jurisdiction conferred upon him by the laws of that State to examine and bind over for trial in a superior court, is authorized by Art. IV, § 2, Subd. 2 of the Constitution of the United States, and section 5278, Rev. Stat.

THE petitioner was charged by affidavit before a justice of the peace of Youngstown township, Ohio, with the crime of obtaining four hundred dollars' worth of jewelry at Youngstown, Ohio, by false pretences, contrary to the law of that State. He was arrested as a fugitive from justice and brought before a magistrate of the city of New York, August 11, 1902. The Governor of New York, after a hearing, at which the accused was represented by counsel, issued his warrant, dated August 22, 1902, directed to the police commissioner of New York city, directing him to arrest the accused and deliver him to the duly accredited agent of Ohio, to be taken to that State.

The warrant recites that it has been represented by the

Governor of Ohio that the accused stands charged in that State of the crime of securing property by false pretences, which is a crime under its law, and that he has fled from that State. It also recites that the requisition was accompanied by affidavits and other papers, duly certified by the Governor of Ohio to be authentic, charging the accused with having committed the said crime and with having fled from Ohio and taken refuge in the State of New York.

On August 29, after the arrest of the petitioner, a writ of *habeas corpus* was allowed by the District Court. The police commissioner made return that he held the accused by virtue of the Governor's warrant. On September 16, 1902, the District Court discharged the writ and remanded the accused to the custody of the police commissioner. This order was taken on appeal to the Circuit Court of Appeals of the Second Circuit, which certified the following questions:

"First. Whether the delivery up of an alleged fugitive from justice against whom a complaint for the crime of securing property by false pretences has been sworn to and is pending before a justice of the peace of Ohio having the jurisdiction conferred upon him by the laws of that State is authorized in view of the provisions of Article IV, section 2, subdivision 2, of the Constitution?

"Second. Is section 5278 of the Revised Statutes, in as far as it authorizes the delivery up of an alleged fugitive from justice upon an affidavit of complaint pending before a justice of the peace in Ohio for the crime of securing property by false pretences, which said justice of the peace has the jurisdiction conferred upon him by the laws of the said State, violative of Article IV, section 2, subdivision 2, of the Constitution?"

Article IV, section 2, subd. 2, of the Constitution reads:

"A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime."

Revised Statutes, sec. 5278, so far as is material, is:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."

*Mr. Max J. Kohler,* with whom *Mr. Moses H. Grossman* was on the brief, for appellant:

The constitutional provision for the delivery up only of persons charged with treason, felony or other crime, to be removed to the State having jurisdiction of the crime, means that the charge must be pending in a court that can try defendant, and not merely before a committing magistrate who can only discharge or hold for another tribunal. *Kentucky* v. *Dennison,* 24 How. 66; Thornton's article on Fugitives from Justice, Cr. Law Mag., vol. 3, 787; *Virginia* v. *Paul,* 148 U. S. 107, 119; *Pennsylvania* v. *Artman,* 5 Philadelphia, 304; *S. C.,* 19 Fed. Cas. No. 10,952; *Virginia* v. *Felts,* 133 Fed. Rep. 85. Where the case is actually triable before the justice it is different. *Virginia* v. *Bingham,* 88 Fed. Rep. 561.

These preliminary proceedings were merely a melioration of the practice of arresting without warrants for crime, to secure presence on indictment to be found. Stephens' History of the Criminal Law, 190; Kinghorn on "The Preliminary In-

vestigation of Crime," in Crim. Law Mag., vol. 3, p. 297; 16 Ency. of Pl. & Pr., 820; 5 Blackstone (Tucker), 300.

The English common law practice authorized removal only after indictment found. *In re Dana*, 68 Fed. Rep. 886, 893.

Oppressive removals to the mother country for trial for alleged crime, was one of the grievances specifically set forth in the Declaration of Independence. Friedenwald: The Declaration of Independence (1904), 249; Winsor: Narrative and Critical History of America, vol. 6, 53; Bancroft: History of the U. S., 1857 ed., vol. 6, 417, 441, 450; *Jack v. Martin*, 14 Wend. 507, 525; 20 Am. State Papers, Lowrie & Franklin, 1842, 41.

Gross hardship, entirely unnecessary, would result from permitting rendition on mere complaint before a committing magistrate. *Beavers v. Henkel*, 194 U. S. 73, 83; *Lawrence v. Brady*, 56 N. Y. 186; Seward's Works, vol. 21, 528; 6 Pa. Law Jour., 413 (1847); *Cockran v. Hyatt*, 172 N. Y. 176, 182.

The words "charged with treason, felony or other crime" were used by the framers of the Constitution in the same sense as that in which analogous words are elsewhere used in the same instrument concerning criminal proceedings, and are inapplicable to preliminary examinations.

As to Art. III, § 2, subd. 3, of the Fifth and Sixth Amendments, in this respect, see *Ex parte Siebold*, 100 U. S. 371, 391; *Ex parte Milligan*, 4 Wall. 2; *Ex parte Wilson*, 114 U. S. 417; *Ex parte Bain*, 121 U. S. 1; *In re Dana*, 7 Ben. 1.

The word "charge" in Article IV, sec. 2, subd. 2, where it is connected with the phrase "to be removed to the State having jurisdiction of the crime," is used in the same sense in which the framers of the Constitution, in Article III defined "cases" within the "judicial power of the United States" to be "vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish," and that the former should be construed in the same manner in which the latter have been defined, as excluding mere preliminary examinations before mere committing magis-

trates acting as conservators of the peace. *Robertson* v. *Baldwin*, 165 U. S. 275; *Todd* v. *United States*, 158 U. S. 278.

As to Rev. Stat. 5278 the decisions are to the effect that the charges must be made "in the regular course of judicial proceedings." The affidavit of charge must itself be produced, and an affidavit merely averring that defendant is charged in the other State is not sufficient. *State* v. *Kufford*, 28 Iowa, 391; *Smith* v. *State*, 21 Nebraska, 552; *Forbes* v. *Hicks*, 27 Nebraska, 111, 116; *Ex parte Pfitzer*, 28 Indiana, 450; *Ex parte Lorraine*, 16 Nevada, 63; *Ex parte White*, 49 California, 435; *Ex parte Powell*, 20 Florida, 807; *State* v. *Richardson*, 34 Minnesota, 115; *Ex parte Pearce*, 32 Tex. Civ. App. 301; *Ex parte Hart*, 63 Fed. Rep. 249, 259; *In re Hooper*, 52 Wisconsin, 699; *People* v. *Stockwell*, 97 N. W. Rep. 765 (Minn.); *In re Van Scriever*, 42 Nebraska, 772, 778; *United States* v. *Dominci*, 78 Fed. Rep. 334.

Mr. *William Travers Jerome* and Mr. *Howard S. Gans* for appellee submitted:

The construction for which the relator contends, involves results so absurd and so detrimental to the public interest as to make it impossible that it should be adopted even if the words of the Constitution were on their face reasonably susceptible of such interpretation. *Prigg* v. *Pennsylvania*, 16 Pet. 539, 612; *In re Chapman*, 166 U. S. 661, 667; *Lau Ow Bew* v. *United States*, 144 U. S. 47, 59; *Holy Trinity Church* v. *United States*, 143 U. S. 457; *Jarrolt* v. *Moberly*, 103 U. S. 580, 586. It would create a chaotic condition in the law, requiring the rendition to one State from another under conditions in which the asylum State would have no reciprocal rights as against the demanding State, and it would favor those States which afford the least safeguards to the accused as against those that afford the greater. It would render the rendition of a fugitive from a sister State more difficult than an extradition from a foreign power, and would create an in-

vidious discrimination in favor of major criminals as against minor ones to the extent of insuring to the major criminal a chance of escape which was denied to his little brother in crime. Nor would it serve as a safeguard to the accused or prevent unwarranted extraditions.

The language of the Constitution does not restrict the right of rendition to cases where the criminal pleading accompanies the demand and such restriction is at variance both with the contemporaneous construction and the history and origin of the provision.

In view of the decisions construing the term "fugitives from justice" as describing all persons in the demanding State at or about the time of the commission of the offense, charged with committing it there, defendants are frequently only "fugitives from justice" by construction, and their removal is sought to States other than that of their domicile. *Roberts* v. *Reilly*, 116 U. S. 80, 197; *Streep* v. *United States*, 160 U. S. 128; *Prigg* v. *Pennsylvania*, 16 Pet. 539, 620; *Kentucky* v. *Dennison*, 24 How. 66, 104; *Ex parte Reggel*, 114 U. S. 642.

As to the construction of the word " charged ", see cases cited *supra* and 2 Moore on Extrad. § 546; Spear on Extrad. 266; Bouvier; Blackstone, Bk. IV, ch. 21; Hale's Pleas of the Crown, 1st Am. ed. 108.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The Constitution provides for the surrender of a person charged with treason, felony or other crime. The statute prescribes the evidence of the charge to be produced, to wit: "A copy of an indictment found or an affidavit made before a magistrate . . . charging . . . treason, felony, or other crime." The offense for which extradition was sought is under the Ohio statute a felony ( Bates' Annotated Ohio Stat. 4th ed. sec. 7076), and subject to trial only upon an

indictment (Art. 1, sec. 10, Bill of Rights, Ohio Constitution), the proceedings in such a case before a justice of the peace being only preliminary and for the purpose of securing arrest and detention. It is contended that the constitutional provision for the extradition of persons "charged with treason, felony or other crime" requires that the charge must be pending in a court that can try the defendant, and does not include one before a committing magistrate, who can only discharge or hold for trial before another tribunal.

But why should the word "charged" be given a restricted interpretation? It is found in the Constitution, and ordinarily words in such an instrument do not receive a narrow, contracted meaning, but are presumed to have been used in a broad sense, with a view of covering all contingencies. In *McCulloch* v. *Maryland*, 4 Wheat. 316, one question discussed was as to the meaning of the word "necessary" as found in the clause of the Constitution giving to Congress power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the Government of the United States, or in any department or officer thereof." Chief Justice Marshall, speaking for the court, said (p. 415):

"This word, then, like others, is used in various senses; and, in its construction, the subject, the context, the intention of the person using them, are all to be taken into view.

"Let this be done in the case under consideration. The subject is the execution of those great powers on which the welfare of a nation essentially depends. It must have been the intention of those who gave these powers, to insure, as far as human prudence could insure, their beneficial execution. This could not be done, by confining the choice of means to such narrow limits as not to leave it in the power of Congress to adopt any which might be appropriate, and which were conducive to the end. This provision is made in a Constitution intended to endure for ages to come, and, consequently,

to be adapted to the various crises of human affairs. To have prescribed the means by which Government should, in all future time, execute its powers, would have been to change, entirely, the character of the instrument, and give it the properties of a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur. To have declared that the best means shall not be used, but those alone without which the power given would be nugatory, would have been to deprive the legislature of the capacity to avail itself of experience, to exercise its reason, and to accommodate its legislation to circumstances."

Under the Constitution each State was left with full control over its criminal procedure. No one could have anticipated what changes any State might make therein, and doubtless the word "charged" was used in its broad signification to cover any proceeding which a State might see fit to adopt by which a formal accusation was made against an alleged criminal. In the strictest sense of the term a party is charged with crime when an affidavit is filed, alleging the commission of the offense and a warrant is issued for his arrest, and this is true whether a final trial may or may not be had upon such charge. It may be, and is true, that in many of the States some further proceeding is, in the higher grade of offenses at least, necessary before the party can be put upon trial, and that the proceedings before an examining magistrate are preliminary, and only with a view to the arrest and detention of the alleged criminal; but extradition is a mere proceeding in securing arrest and detention. An extradited defendant is not put on trial upon any writ which is issued for the purposes of extradition, any more than he is upon the warrant which is issued by the justice of the peace directing his arrest.

Cases are referred to, such as *Virginia* v. *Paul*, 148 U. S. 107, in which a distinction is made between the preliminary proceedings looking to the arrest and detention of the

defendant and those final proceedings upon which the trial is had. That was a removal case, and, discussing the question, Mr. Justice Gray, speaking for the court, said (p. 119):

"By the terms of section 643, it is only after 'any civil suit or criminal prosecution is commenced in any court of a State,' and 'before the trial or final hearing thereof,' that it can 'be removed for trial into the Circuit Court next to be holden in the district where the same is pending,' and 'shall proceed as a cause originally commenced in that court.'

"Proceedings before a magistrate to commit a person to jail, or to hold him to bail, in order to secure his appearance to answer for a crime or offense, which the magistrate has no jurisdiction himself to try, before the court in which he may be prosecuted and tried, are but preliminary to the prosecution, and are no more a commencement of the prosecution than is an arrest by an officer without a warrant for a felony committed in his presence."

But such decisions, instead of making against the use in this constitutional section of the word "charged" in its broad sense, make in its favor, because, as we have noticed, an extradition is simply one step in securing the arrest and detention of the defendant. And these preliminary proceedings are not completed until the party is brought before the court in which the trial may be had. Why should the State be put to the expense of a grand jury and an indictment before securing possession of the party to be tried? It may be true, as counsel urge, that persons are sometimes wrongfully extradited, particularly in cases like the present; that a creditor may wantonly swear to an affidavit charging a debtor with obtaining goods under false pretences. But it is also true that a prosecuting officer may either wantonly or ignorantly file an information charging a like offense. But who would doubt that an information, where that is the statutory pleading for purposes of trial, is sufficient to justify an extradition? Such

possibilities as these cannot be guarded against. While courts will always endeavor to see that no such attempted wrong is successful, on the other hand care must be taken that the process of extradition be not so burdened as to make it practically valueless. It is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt

While perhaps more pertinent as illustration than argument, the practice which obtains in extradition cases between this and other nations is worthy of notice. Sections 5270 to 5277, Rev. Stat., inclusive provide for this matter. In none of these sections or in subsequent amendments or additions thereto is there any stipulation for an indictment as a prerequisite to extradition. On the contrary, the proceedings assimilate very closely those commenced in any State for the arrest and detention of an alleged criminal. They go upon the theory that extradition is but a mere step in securing the presence of the defendant in the court in which he may lawfully be tried. In the memorandum issued by the Department of State in May, 1890, in reference to the extradition of fugitives from the United States in British jurisdiction, is this statement (1 Moore on Extradition, p. 335):

"It is stipulated in the treaties with Great Britain that extradition shall only be granted on such evidence of criminality as, according to the laws of the place where the fugitive or person charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had there been committed.

"It is admissible as constituting such evidence to produce a properly certified copy of an indictment found against the fugitive by a grand jury, or of any information made before an examining magistrate, accompanied by one or more depositions setting forth as fully as possible the circumstances of the crime."

And this is in general harmony with the thought underlying extradition.

Entertaining these views, we answer the first question in the affirmative and the second in the negative.

Mr. Justice Harlan did not hear the argument and took no part in the decision of this case.