## WEBSTER *v.* SPLAIN.

EXTRADITION; CRIMINAL LAW.

1. Whether a demand for extradition be based upon an indictment or an inartificial affidavit upon which the warrant has been issued, the extradition amounts to nothing more than a step in securing arrest and detention, and this is especially true where the request from the demanding State is based upon a complaint filed with a committing magistrate, since it implies further proceedings before the defendant can be brought to trial.

2. A requisition by the governor of Illinois for extradition of a person in this District is properly complied with where the record shows the issuance of a warrant in that State based upon an affidavit charging the accused with unlawfully and feloniously obtaining merchandise from a person named "by means and by use of the confidence game," and a statute of that State defines the confidence game, and provides that in an indictment therefor it shall be sufficient to charge that the accused unlawfully and feloniously obtained another's property by means and use of such game. The courts

Note.—On use of term "confidence game" or similar term in statute or indictment to describe offense, see note in L.R.A.1916F, 684.

of this District, under such circumstances, will not inquire whether
the facts charged in the affidavit are sufficient to constitute an
offense under the statute. It is sufficient that a crime under an
express statute is charged. (Distinguishing *Hard* v. *Splain, ante,*
1.)

No. 2943. Submitted December 4, 1916. Decided January 2, 1917.

HEARING on an appeal by the petitioner from a judgment of
the Supreme Court of the District of Columbia denying a peti-
tion for the writ of habeas corpus.                          *Affirmed.*

₀ The COURT in the opinion stated the facts as follows:

Appellant, Lewis H. Webster, filed a petition in the supreme
court of the District of Columbia for a writ of habeas corpus,
alleging his unlawful detention by appellee, Maurice Splain,
United States marshal for this District, upon a warrant issued
on a requisition made by the governor of the state of Illinois.
From the judgment denying the writ and remanding him to the
custody of the marshal, this appeal was taken.

The affidavit filed in the municipal court of the city of Chi-
cago upon which the original warrant for appellant's arrest was
issued, reads as follows:

State of Illinois,
City of Chicago. } ss:

Frank G. Clark, of 160 W. Jackson Boul. street, Chicago, Ill.,
complains to Arnold Heap one of the judges of the municipal
court of Chicago, and being duly sworn and examined on oath,
states that L. H. Webster did on the 17th day of December,
A. D. 1915, at the city of Chicago in the county aforesaid, un-
lawfully and feloniously obtain from Frank G. Clark, this
complainant, 350 140-pound sacks of flour of the value of
eleven hundred and ninety and no /100 ($1,190) dollars, the
personal goods, chattels, and property of the said Frank G.

Clark, by means and by use of the confidence game, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the people of the State of Illinois.

This complainant further says that he has just and reasonable grounds to believe and does believe that said L. H. Webster committed said offence.

Wherefore, the said Frank G. Clark prays a warrant may issue against the said L. H. Webster according to law.

Frank G. Clark.

Subscribed and sworn to before me this 30th day of December, A. D. 1915.

Arnold Heap,
Judge of the Municipal Court of Chicago.

I have examined the within complaint and the complainant and am satisfied that there is probable cause for filing the same. Leave is hereby granted to file it, and it is ordered that a warrant issue against the accused.

Bail fixed at $3,000.

Arnold Heap,
Judge of the Municipal Court of Chicago.

It is conceded that the requisition papers are regular and in the usual form, but it is urged that appellant is not charged with the commission of a crime under the laws of the State of Illinois. The statute of Illinois upon which the complaint is based (secs. 98 and 99, chap. 38, Hurd's Rev. Stat. 1915, 1916) provides as follows:

"98. Confidence Game.—Every person who shall obtain, or attempt to obtain, from any other person or persons, any money or property, by means or by use of any false or bogus checks, or by any other means, instrument or device, commonly called the confidence game, shall be imprisoned in the penitentiary not less than one year nor more than ten years.

"99. Confidence Game; Indictment.—In every indictment

under the preceding section, it shall be deemed and held a sufficient description of the offence, to charge that the accused did, on, etc., unlawfully and feloniously obtain, or attempt to obtain (as the case may be), from A B (here insert the name of the person defrauded or attempted to be defrauded), his money (or property, in case it be not money), by means and by use of the confidence game."

*Mr. Daniel W. Baker* and *Frederic R. Whippler,* for the appellant:

1. The court below refused to consider the affidavit setting up the evidence relied on, and held that as there was another affidavit in the case charging "a confidence game," the affidavit in aid of extradition should not be considered. This is contrary to the ruling of this court. *Hard* v. *Splain, ante,* 1.

2. In habeas corpus proceedings a judge or tribunal may go behind the executive warrant and examine into the sufficiency of the indictment or complaint upon which the requisition is. based and warrant issued, and in case the indictment or affidavit of complaint does not legally charge a crime, or is fatally defective, to discharge the prisoner. *Re Terrell,* 51 Fed. 213; *People* v. *Brady,* 56 N. Y. 182; *Jones* v. *Leonard,* 50 La. 106; *Re Mohr,* 73 Ala. 503; *People* v. *Hyatt,* 188 U. S. 691; *Roberts* v. *Reilly,* 116 U. S. 80; *Tinsley* v. *Treat,* 205 U. S. 20; *Pierce* v. *Creecy,* 210 U. S. 387.

3. It must be shown that the prisoner is a fugitive from justice. *Ex parte Reggel,* 114 U. S. 642–651; *Roberts* v. *Reilley,* 116 U. S. 80; *Ex parte Joseph Smith,* 3 McLean, 121; *Jones* v. *Leonard,* 50 Iowa, 106; *Re Mohr,* 73 Ala. 503; *State* v. *Jackson,* 36 Fed. 258; *Hartman* v. *Aveline,* 63 Ind. 344; *Cook* v. *Hart,* 146 U. S. 193; *Re Heyward,* 1 Sandf. 701; *Re Fetter,* 3 Zab. N. J. 311; *Re Cannon,* 47 Mich. 481, 485.

4. In *Pierce* v. *People,* 81 Ill. 98, the identical question raised here was considered by the court, and the court held that the acts in that case did not bring the party within section 98 of the Illinois Criminal Code, but within section 96, and

not being written no prosecution could be had. See also *Lucas
v. People,* 75 Ill. App. 662; *Breckenfeld* v. *People,* 91 Ill. 400;
*Maxwell* v. *People,* 158 Ill. 248, is not applicable to the ques-
tion here raised. That case merely decides that section 99
being a procedure act to enforce section 98 of the criminal code
of Illinois is constitutional.

*Mr. John E. Laskey,* United States District Attorney, and
*Mr. Mabry C. Van Fleet,* Special Assistant, for the United
States in their brief cited:

*Appleyard* v. *Massachusetts,* 203 U. S. 222; *Benson* v. *Hen-
kel,* 198 U. S. 1; *Chilson* v. *People,* 224 Ill. 535; *Chung Kin
Tow* v. *Flynn,* 218 Fed. 64; *Kentucky* v. *Dennison,* 24 How.
66; *Compton* v. *Alabama,* 214 U. S. 1; *Drew* v. *Thaw,* 235
U. S. 432; *Ex parte Graham,* 216 Fed. 813; *Ex parte Reggel,*
114 U. S. 642; *Ex parte Graham,* 216 Fed. 813; *Hard* v.
*Splain,* 44 Wash. L. Rep. 278; *Kentucky* v. *Dennison,* 24 How.
66; *Ledbetter* v. *United States,* 170 U. S. 606; *McNichols* v.
*Pease,* 207 U. S. 1; *Re Strauss,* 197 U. S. 324; *Morton* v.
*People,* 47 Ill. 468; *Pearce* v. *Texas,* 155 U. S. 311; *Pierce* v.
*Creecy,* 210 U. S. 387; *Pierce* v. *People,* 81 Ill. 98; *Roberts*
v. *Reilly,* 116 U. S. 89; *Webb* v. *York,* 79 Fed. 616; Hurd's
Rev. Stat. (Ill.) Sections 98 and 99, chap. 38.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is the contention of counsel for appellant that, according
to the affidavit of the complaining witness accompanying the
requisition stating the facts upon which the prosecution relies,
appellant can not be charged with a violation of the confidence
game statute above quoted; that the most he is shown to have
done was to secure credit upon certain alleged false representa-
tions orally made to the complaining witness, and that this only
constitutes a crime in Illinois when such representations are
made in writing. Hurd's Rev. Stat. chap. 38, sec. 97. But
counsel seem to overlook the fact that appellant is charged with

the commission of a crime under an express statute of the State
of· Illinois. When this appears, further inquiry will not be
indulged in habeas corpus proceedings to prevent extradition.
It may well be that an indictment based upon this complaint
would fall when assailed by a motion in arrest of judgment, or
even on demurrer as a defective pleading, but those are all
questions for the courts of Illinois. Even this would require
us to anticipate the nature of the indictment which may be
framed which makes such tests totally inapplicable when a
crime, as here, is charged merely by affidavit. As was said in
*Pierce* v. *Creecy,* 210 U. S. 387, 52 L. ed. 1113, 28 Sup. Ct.
Rep. 714: "We are unable to adopt the test suggested by
counsel, that an objection, good if taken on arrest of judgment,
would be sufficient to show that the indictment is not a charge
of crime. Not to speak of the uncertainty of such a test, in
view of the varying practice in the different States, there is
nothing in principle or authority which supports it. Of course,
such a test would be utterly inapplicable to cases of a charge of
crime by affidavit, which was held to be within the Constitution.
In *Re Strauss,* 197 U. S. 324, 49 L. ed. 774, 25 Sup. Ct. Rep.
535. The only safe rule is to abandon entirely the standard to
which the indictment must conform, judged as a criminal plead-
ing, and consider only whether it shows satisfactorily that the
fugitive has been in fact, however inartificially, charged with
crime in the State from which he has fled."

Under the Constitution, full power resides in each State to
control its own criminal procedure. Hence, whether the de-
mand in extradition be based upon an indictment or an inarti-
ficial affidavit upon which a warrant has been issued, the ex-
tradition amounts to nothing more than a step in securing arrest
and detention. Especially is this true where the request from
the demanding State is based upon a complaint filed with a com-
mitting magistrate, since it implies further proceedings.before
the defendant can be brought to trial. "It may be, and is true,
that in many of the States some further proceeding is, in the
higher· grade of offenses at least, necessary before the party can
be put upon trial, and that the proceedings before an examin-

ing magistrate are preliminary, and only with a view to the arrest and detention of the alleged criminal; but extradition is a mere proceeding in securing arrest and detention. An extradited defendant is not put on trial upon any writ which is issued for the purposes of extradition, any more than he is upon the warrant which is issued by the justice of the peace directing his arrest." Ibid. Or as was said in *Virginia* v. *Paul,* 148 U. S. 107, 37 L. ed. 386, 13 Sup. Ct. Rep. 536: "Proceedings before a magistrate to commit a person to jail, or to hold him to bail, in order to secure his appearance to answer for a crime or offense, which the magistrate has no jurisdiction himself to try, before the court in which he may be prosecuted and tried, are but preliminary to the prosecution, and are no more a commencement of the prosecution, than is an arrest by an officer without a warrant for a felony committed in his presence."

But we are not prepared to say, if we were called upon to decide, in view of the decisions of the courts of Illinois, that the circumstances of this case, as stated in the accompanying affidavit of the complaining witness, are sufficient to withdraw it from the operation of the confidence game statute. In *Chilson* v. *People,* 224 Ill. 535, 79 N. E. 934, where the defendant entered into a contract of partnership with another for the purpose of purchasing and selling real estate, but where it appeared that the contract was a mere cloak to enable defendant to defraud his partner, it was urged that a prosecution could not be maintained under the confidence game statute, since what occurred amounted to nothing more than a breach of a contract to carry on a legitimate business. In disposing of this contention the court said: "We think it clear that Chilson obtained the confidence of Spooner by representing that he would engage in the contemplated business with Spooner, as his partner, in Milwaukee, and by reason of the confidence so inspired induced Spooner to pay the money to Marden. It is also evident that Chilson did not intend to engage in the business in Milwaukee, and that he falsely pretended he would do so for the purpose of leading Spooner to pay his money for lots, which seem to

have been of little or no value.  Chilson says he has been con-
victed merely 'for a failure to carry out a plain civil contract or
for a breach thereof,' and that the distinction between the breach
of a contract and the false and fraudulent scheme called the
confidence game has been disregarded.  If plaintiff in error had
entered into the contract in good faith his reasoning would be
conclusive.  Where a contract apparently legal is entered into
by one party with the intention of taking no step to carry it out,
but with the wrongful intent of causing the other to part with
his money without receiving any adequate consideration there-.
for, such contract may, and in this case did, become a mere
incident of the 'false and fraudulent scheme.'  The ordinary
case of agreeing to sell the gullible one a gold brick now in the
possession of the aged Indian presents a breach of a contract,
and yet counsel would scarcely pretend that it is for that reason
any the less a confidence game.  The fact that the affair was
made to assume the guise of an ordinary business transaction,
whereby, as a preliminary, Spooner was required to pay his
money for the lots, is without significance.  It is the substance,
and not the form, that is material.  The transaction in question
was a 'swindling operation, in which advantage was taken of the
confidence reposed by the prosecuting witness in the plaintiff
in error,'—a confidence that had been obtained by deceit and
false promises.  The case came within the confidence game
statute."

In the present case the fact remains that appellant stands
charged in a complaint duly verified by oath, drawn in con-
formity with the statute, of the offense of having perpetrated a
confidence game, and this is sufficient to warrant his removal to
the demanding State.  Manifestly, the courts of this District
will not in a habeas corpus proceeding to prevent extradition
assume the jurisdiction which belongs exclusively to the courts
of Illinois and determine the sufficiency of the complaint by a
construction of the various statutes of that State touching the
case.  The rule, many times laid down by the courts of this
country, both State and Federal, was again announced by Mr.

Justice Moody, speaking for the court, in *Pierce* v. *Creecy,* supra, as follows:

"This court, in the cases already cited, has said, somewhat vaguely but with as much precision as the subject admits, that the indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. . . . If more were required it would impose upon courts, in the trial of writs of habeas corpus, the duty of a critical examination of the laws of States, with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the States and fruitful of miscarriages of justice. The duty ought not to be assumed unless it is plainly required by the Constitution, and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance."

It is sought to parallel this case with the case of *Hard* v. *Splain,* ante, 1. In that case, it was sought to remove Hard to the State of Michigan to answer the charge of kidnapping. It appeared from the complaint and the affidavit in support thereof that Hard was in fact charged with kidnapping his own daughter by taking her from the custody of her mother and bringing her into the District of Columbia. An examination of the statutes of Michigan disclosed no law in that State upon which such a charge of crime could be based. Hence, the writ was granted to prevent Hard's removal upon the sole ground that, because of his relation to his daughter, as disclosed by the record, the daughter not having been placed in the custody of the mother by the decree of a court, he was a person incapable of committing the crime of kidnapping in Michigan in the manner charged. We were not called upon to determine whether Hard had committed an offense under this or that statute of Michigan. It was clear that there was a total absence of any legal basis for the complaint. Here no such question is involved. What we are asked to do is to try the case to the extent of determining which, if any, of several statutes of the demanding

State may have been violated.  This the courts have persistently refused to do.

The judgment is affirmed, with costs.

*Affirmed.*