Tommy L. WILKINS *v.* STATE of Arkansas

CR 75-35                                    528 S.W. 2d 382

Opinion delivered October 6, 1975

*Brown, Compton & Prewett*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Gary Isbell*, Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. This is an appeal by Tommy L. Wilkins from an order of the Union County Circuit Court

denying his petition for habeas corpus in connection with an extradition proceeding.

The facts appear as follows: On or about March 16, 1972, an automobile was stolen from an El Dorado automobile agency in Union County. The theft was reported to the El Dorado Police Department on March 18 and a description of two suspects was furnished to the police by the owner of the automobile. By matching the description with individuals known to the police department, one William D. Lang was taken into custody in Little Rock by Little Rock police officers on March 20, 1972, and was turned over to the El Dorado officers on the same day.

Lang gave a statement in which he admitted the theft of the automobile and also admitted his participation in an armed robbery in New Mexico. Lang's statement is not in the record but he apparently implicated the appellant Wilkins because information was filed and warrants issued on March 20 charging both Lang and Wilkins with the automobile theft. Wilkins was not apprehended until March 27, 1972, when he surrendered himself to Detective Captain Monroe Taylor of the El Dorado Police Department, who served the arrest warrant on Wilkins in his attorney's office.

Also on March 20, 1972, a criminal complaint was filed with the magistrate of Hidalgo District, New Mexico, charging Wilkins with having committed the crime of robbery and on the same date a criminal arrest warrant was issued against Tommy Wilkins. On April 7, 1972, the assistant district attorney of Hildago County, New Mexico, filed an application for extradition for Tommy Wilkins with the Governor of New Mexico. The Governor of New Mexico granted the application and on April 12 made formal request of the Governor of Arkansas that Tommy Wilkins be apprehended and delivered to the sheriff of Hidalgo County, New Mexico, for return to that state. On April 18 the Governor of Arkansas honored the requisition and ordered Tommy Wilkins delivered to the New Mexico sheriff for return to that state.

Apparently by agreement of the parties Wilkins was first tried on the charges pending against him in Arkansas. After

those charges were disposed of he filed his petition for habeas corpus on November 9, 1972, in the Union County Circuit Court and it was the denial of that petition which resulted in this appeal. From the argument presented in behalf of the petition in the trial court, and from the appellant's argument and brief on this appeal, it appears that the essence of the appellant's contention is set out in the points he has designated as follows:

"Since the arrest warrant and its supporting affidavits upon which extradition is grounded are not based upon credible hearsay, they do not properly charge Tommy Wilkins with a crime under the law of New Mexico and he is not, therefore, subject to extradition.

It is not clear from the requisition and supporting papers that the Tommy Wilkins wanted in New Mexico is the same Tommy L. Wilkins before the court and extradition should not issue without proof of identity."

The appellant agrees the general law pertaining to extradition to be that after the requisition has been honored by the Governor of the asylum state, the circuit court can consider a petition for habeas corpus for only two purposes, i.e., to establish the identity of the accused and to determine whether he is a fugitive, if the requisition shows facts necessary to return the fugitive. *Glover v. State*, 257 Ark. 241, 515 S.W. 2d 641 (1974). The appellant argues, however, that the extradition warrant issued in New Mexico was based on erroneous information; that the hearsay information upon which the warrant was issued in New Mexico was not *credible* hearsay and for that reason the warrant was void. Our own statute, Ark. Stat. Ann. § 43-3003 (Repl. 1964), pertaining to such affidavit provides in part as follows:

"The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy must be authenticated by the Executive Authority making the demand, which shall be prima facie evidence of its truth."

The affidavit on which the New Mexico warrant was

issued and which is under attack on this appeal was subscribed and sworn on April 17, 1972, and appears in the record as follows:

"CHARLES C. GRAY, being of lawful age, being first duly sworn on oath deposes and says:

That information and belief on which he filed the charge of armed robbery against Defendant is as follows:

1.   That on Friday, March 17, 1972, he interviewed Ida Ornelas, who was present during a robbery of the Circle H Grocery Store in Lordsburg, Hidalgo County, New Mexico, who stated to him that two male subjects came into the store; one subject had dark brown hair, a moustache, wearing dark square sun glasses, a blue shirt, about twenty years old; the second subject had blonde hair, a yellow shirt with long sleeves and also was about twenty years old. The two subjects came into the store and one went to each side of the counter; one of them grabbed the cashier and threatened her with a black knife which he held against her side. Ida Ornelas further stated that she then rang the cash register and gave the boys all the money there was in there.

2.   That on March 20, 1972, I talked to Captain Monroe Taylor, El Dorado Police Department, El Dorado, Arkansas, who stated to me that William Danny Lang and Tommy Wilkins had been picked up by the Arkansas Police and had told that officer that they had robbed a grocery store in Lordsburg, Hidalgo County, New Mexico, on March 17, 1972. Captain Taylor also described the subjects to this Officer and his description matched the description of the robbers given to your Affiant by Ida Ornelas. Affiant knows of his own knowledge that no grocery store, other than the Circle H Grocery Store, was robbed in Lordsburg, Hidalgo County, New Mexico, on March 17, 1972.

3.   That on March 20, 1972, your Affiant caused to be made a Criminal Complaint before Rosa Lina Salinas, Magistrate, Hidalgo County, New Mexico, charging the

said Tommy Wilkins with the crime of: 'Robbery while armed with a deadly weapon,' in violation of 40A-16-2, N.M.S.A., 1953 Compilation, as amended, which is a felony."

Sheriff Leroy C. McCarty also filed an affidavit setting out that on March 20 he received the warrant charging Wilkins with robbery on the complaint of Charles C. Gray, and his affidavit then states:

"That at the time the above Criminal Complaint was filed the defendant, Tommy Wilkins, was without the State of New Mexico and has not returned thereto and at the present time is detained by Captain Monroe Taylor, El Dorado Police Department, El Dorado, Arkansas, who informed your Affiant on the 21st day of March, 1972, that the said Tommy Wilkins was taken into custody upon this charge."

The appellant contended before the circuit court, and contends on his appeal here, that the affidavit of Officer Gray is fatally defective in that Mr. Gray did not actually talk with Captain Monroe Taylor on March 20, 1972, and that in fact the appellant Wilkins was not in custody at the time the affidavit was made. The appellant contends that this affidavit of Sheriff McCarty was in error in that the appellant was not in fact detained by Captain Taylor on March 21, 1972, and that Captain Taylor did not in fact so advise Sheriff McCarty. The appellant contends that because of these discrepancies, the warrant for his arrest and the extradition proceedings emanating therefrom were invalid.

In support of his argument on his first point, the appellant points out that the New Mexico statute, N.M.S.A. § 41-23-13, Rule 14, reads as follows:

"[P]robable cause for issuance of a warrant. The showing of probable cause shall be based upon substantial evidence, which may be hearsay in whole or in part, *provided there is substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual* basis for the information furnished." (Appellant's emphasis).

The appellant apparently intended New Mexico statute, N.M.S.A. § 41-23-*14* (Supp. 1973), Rule 14, but we take judicial notice that these rules of criminal procedure in New Mexico were adopted by Supreme Court rule on May 3, 1972, and did not become effective until July 1, 1972. Be that as it may, we find no merit in the appellant's contention on this point.

The New Mexico warrant was actually issued on the affidavit of Charles C. Gray and the warrant had already been issued and placed in the hands of Sheriff McCarty when Sheriff McCarty made his affidavit. Officer Gray stated in his affidavit that he talked to Captain Monroe Taylor of the El Dorado Police Department March 20, 1972, and was told that William Danny Lang and Tommy Wilkins had been "picked up by the Arkansas Police and had told that officer that they had robbed a grocery store in Lordsburg, Hidalgo County, New Mexico, on March 17, 1972." He also stated that Captain Taylor described the subjects and the description matched the description of the robbers as described by the robbery victim. It must be remembered that it was the description of the suspects given to Captain Monroe Taylor that resulted in the larceny warrants being issued for Lang and Wilkins, and that resulted in Lang being "picked up" by Little Rock police officers in Little Rock. The affidavit of Charles C. Gray does not state that *Captain Taylor* "picked up" Danny Lang and Tommy Wilkins. It simply says that they were picked up by "the Arkansas Police and had told that officer that they had robbed a grocery store in Lordsburg. . . ."

Most important, however, as we view the record in this case, the appellant fell far short of proving that the affidavit of Charles C. Gray was erroneous in any respect. Captain Taylor had retired as a detective from the El Dorado Police Department at the time he testified and he testified from memory refreshed by such information as was contained in the El Dorado Police file folders. Excerpts from Captain Taylor's testimony on direct examination by appellant's attorney appear as follows:

"Okay. Okay now, you can use any part of that you want to, [referring to police record file] Mr. Taylor, to

refresh your memory because I'm going to ask you some questions and I am looking at an affidavit signed by Charles C. Gray, who is identified in this proceedings as chief of police of Lordsburg, New Mexico. Now is there anything in that file that can tell you about whether or not you've talked by phone to a Charles C. Gray of Lordsburg, New Mexico?

A. I don't remember the phone conversation in general, but apparently I did. I wrote his name down here, a phone number, and this is or should be the phone number. I just don't remember word for word what the conversation was.

* * *

Q. Do I understand you to say that you have no memory yourself or present memory of any conversation with Charles C. Gray of Lordsburg, New Mexico?

A. I just don't remember conversation.

Q. That's what I understand. It may have happened, you just don't remember it?

A. That's right.

* * *

A. I can't positively say that I remember it, any conversation.

Q. All right. Do you remember — let me read you this, Mr. Taylor, this is an affidavit filed by Charles C. Gray who's identified as chief of police of Lordsburg, New Mexico. This is an affidavit he signed on April 7, 1972, and in paragraph 2, I'm reading you, and listen, he says, 'That on March 20, 1972, I talked to Captain Monroe Taylor, El Dorado Police Department, El Dorado, Arkansas, who stated to me that William Danny Lang and Tommy Wilkins had been picked up by the Arkansas Police and had told that officer that they had

robbed a grocery store in Lordsburg, Hidalgo County, New Mexico, on March 17, 1972. Captain Taylor also described the subjects to this Officer and his description matched the description of the robbers given to your affiant by Ida Ornelas.' Do you remember any of that conversation?

A.   It's just been so long, I just don't remember it."

Captain Monroe Taylor testified that he probably would have known Wilkins by sight had he met him on the street but that the first dealing he had with him was when he arrested him in his attorney's office. He said that he just knew Wilkins when he saw him, and that they might have a picture of Wilkins at the police department but he does not remember whether they did or not. He said that to his knowledge he had never arrested Wilkins before he arrested him in the attorney's office on March 27. He said he had never taken a statement from Wilkins and that Wilkins was not in custody on March 20.

On cross-examination Captain Taylor testified he recalled investigating the automobile larceny charge himself, assisted by Officer Calhoun. He testified that during the course of that investigation he obtained the descriptions of the suspects and one of the suspects was Tommy Wilkins. He said that based on his investigation and the description he had, he decided he had reasonable grounds to arrest Wilkins and also Danny Lang for automobile theft. He said he took a description from Mr. Foster, the owner of the automobile, of some suspicious people who had been on the premises and in the automobile immediately before it was missed from his premises; that he matched these descriptions with some known individuals, and that it was this "match up" with the descriptions of Mr. Lang and Mr. Wilkins that caused him to request the prosecuting attorney's office to issue a warrant for their arrest on the charge of grand larceny. He said that on March 20, after he received information that Danny Lang was a resident of Little Rock, that information was forwarded to the Little Rock Police Department and Danny Lang was in fact arrested on that date. He said he did not remember at what point he obtained information that there had been a

robbery in New Mexico, and did not remember whether he knew a warrant had been circulated at his office at that time. He then testified as follows:

"Q. I want to show you the police file again, and contained in that police file is a statement from William Danny Lang dated March 20, which we've all agreed is the proper and correct date that he was arrested. Do you recall this?

A. This is when I first come aware of the armed robbery.

Q. In other words you had access to and did in fact read that statement from Danny Lang?

A. Yes.

* * *

Q. All right, you did have access and you did read Danny Lang's statement?

A. Yes.

Q. And you knew then based on his statement that a crime had been committed or apparently had been committed by his statement in New Mexico?

A. Yes.

Q. Now then after that information came to you what was done with that information?

A. The information was relayed on to the officers that had jurisdiction over this armed robbery.

Q. Okay. Do you recall whether or not you yourself would have been the one that initiated that inquiry?

A. I'm sure I must have notified them, Beryl, but I don't remember the conversation we had.

Q. Well, you were asked a question back on direct examination while ago. I think at this time I'd like to go into that with you. Is it your testimony today under oath that you did not have a conversation with a person that purported himself to be Charles C. Gray, a police officer in New Mexico, or is it your testimony that you had a conversation but you do not remember all of the details of that conversation?

A. I don't remember the conversation, period. No part of it.

Q. All right. Do you recall whether or not you got an inquiry back from the State of New Mexico?

A. Yes.

Q. All right, would this have been after the information was given to them by your department?

A. Yes.

Q. And you stated while ago that you think that you must have been the one that initiated that initial call so that they would know what information your police department had.

A. I'm sure I did.

Q. What would be your normal — what would be a normal way for you to transmit this type of information to any other jurisdiction — say in years past, what would be normal?

A. Just pick up the phone and call the officer in charge of the investigation or the —

Q. But in your department what's been the normal — has it been the person in charge or has it been one of the other detectives?

A. Normally the person in charge.

Q. And you're that person in charge?

A. Yes.

Q. So if a call had been initiated if you'd been follow-ing normal practice that you had used in years past, you being the officer in charge, you would more than likely have made the telephone call?

A. Yes."

After reading the affidavit again in open court Captain Taylor testified that he could not say that any part of the affidavit was untrue.

The case of *United States* v. *Flood*, 374 F. 2d 554 (2d Cir. 1967) was similar on its facts to the case at bar and illustrates the ordinary scope of review of an extradition warrant. The court in that case said:

"The petitioner complains that the affidavit of Deputy Sheriff Holman, attached to the extradition warrant of the Governor of Florida, was insufficient to support the information and rendered the latter invalid because it was based largely upon hearsay information and that therefore the State of New York had no power to act upon it. But, in considering the sufficiency of the ex-tradition warrant and the papers accompanying it to qualify under Title 18 U.S.C. § 3182, it is not for the asylum state on habeas corpus to pass upon the quality, persuasiveness or weight of the evidential matter on the basis of which the Governor of Florida issued the ex-tradition warrant, for it is solely a question of law whether on the face of the papers accompanying the warrant there was sufficient to say that a crime was 'substantially charged' against Vitiello under the laws of Florida and that he was alleged to be a fugitive. The warrant and attached papers in this case were un-questionably sufficient. *Appleyard* v. *State of Massachusetts,* 203 U.S. 222, 27 S. Ct. 122, 51 L. Ed. 161 (1906); *In re Strauss,* 197 U.S. 324, 25 S. Ct. 535, 49 L. Ed. 774 (1905); *Munsey* v. *Clough,* 196 U.S. 364, 25 S. Ct. 282, 49 L. Ed. 515 (1905)."

In the Texas case of *Ex parte Powers,* Tex. Cr. App., 391 S.W. 2d 413 (1965), the Texas Court said:

> "In extradition cases it is held that, unless clearly void, the validity of an affidavit or indictment upon which demand for extradition is based and its sufficiency as a criminal pleading will be left to the courts of the demanding state and not of this state."

See also *Ex parte Gray,* Tex. Cr. App., 426 S.W. 2d 241 (1968); *Ex parte Scott,* Tex. Cr. App., 446 S.W. 2d 307 (1969).

In the case of *Stuart v. Johnson, Sheriff,* 192 Ark. 757, 94 S.W. 2d 715 (1936), a petition for habeas corpus in an extradition proceeding was based on the allegation that the statute of limitations had run on the crime charged, and that there was a variance between the charge as set out by affidavit and the information and proof offered. In that case we said:

> "Appellant argues that the charge is barred by limitations. That may be, or she may have been a fugitive so as to prevent the statute bar from attaching. At any rate that is a matter of defense which may be offered in defense of the charge, but not here.
>
> As to the alleged variance in the charge as set out by affidavit and information and proof offered we have nothing to do. Suffice it to say there is a 'substantial charge' of a violation of the laws of the demanding State. Section 3, Act No. 126, *supra,* [Ark. Stat. Ann. § 43-3003 (Repl. 1964)]."

In recognition of our own statute, § 43-3003, *supra,* we adhere to the reasoning set out by the United States Supreme Court in the case of *Pierce v. Creecy,* 210 U.S. 387 (1908), wherein the court said:

> ". . . the indictment, in order to constitute a sufficient charge of a crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. . . . If more were required it would

impose upon courts, in the trial of writs of habeas corpus, the duty of a critical examination of the laws of states with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the states, and fruitful of miscarriage of justice. The duty ought not to be assumed unless it is plainly required by the Constitution. . . ."

This reasoning is particularly applicable as to the affidavit in the case at bar since N.M.S.A. § 41-23-14, *supra,* is newly adopted and apparently the courts of New Mexico have yet to construe its terms.

The appellant's second point as to his proper identity merits little discussion in the light of what we have already said. There is no evidence that the appellant had been improperly described or identified by other than his proper and only name. The Governor of Arkansas, by his act in honoring the requisition, found that appellant was a fugitive from justice. In this state of the case the rule seems to be that before the appellant would be entitled to a discharge by court order, the evidence would have to be practically conclusive in his favor. *State ex rel. Lewis, Sheriff* v. *Allen,* 194 Ark. 688, 109 S.W. 2d 952 (1937); *Letwick* v. *State,* 211 Ark. 1, 198 S.W. 2d 830 (1947). The appellant offered only the evidence that he was not in the custody of the El Dorado police on March 20, 1972, and certainly we do not consider this as evidence which is "practically conclusive in his favor."

The judgment is affirmed.