398 So.2d 1108 (1981)
STATE of Louisiana
v.
David TYLER.
No. 80-K-2823.
Supreme Court of Louisiana.
May 18, 1981.
*1109 D. G. Tyler, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John Harrison, Sam A. Smith, Asst. Dist. Attys., for plaintiff-respondent.
PRICE, Justice Ad Hoc.[*]
Remedial writs were granted in this case to review the trial court's denial of a motion to appoint a sanity commission made by a person arrested and detained in Louisiana pending extradition to Texas. The issue presented is the extent to which the alleged mental incapacity of the accused is relevant to the extradition proceedings in Louisiana, the asylum state.
On October 10, 1980, the relator herein, David Tyler, was arrested by Ouachita Parish law enforcement authorities pursuant to a fugitive arrest warrant issued upon information supplied by Harris County, Texas officials.[1] The Texas authorities seek Tyler's extradition in connection with a murder charge pending in Harris County. On October 15, 1980, Tyler's counsel of record filed *1110 a motion in the district court for the appointment of a sanity commission for the purpose of ascertaining relator's mental capacity to proceed with the extradition procedure. The trial court initially denied the motion but subsequently held a contradictory hearing to hear argument on this issue. The trial court concluded that the question of relator's mental incapacity was a matter for resolution in the Texas court. Accordingly, counsel's request for appointment of a sanity commission was denied.
This court granted relator's application for writs in order to consider whether the issue of mental competency is properly within the scope of inquiry in this extradition proceeding. Subsequent to relator's application, a formal extradition requisition was filed by the state of Texas and a warrant of arrest has been signed by the governor of the state of Louisiana. Further proceedings have been stayed pending resolution of this application.
Counsel for relator contends that his client is presently mentally incapable of understanding the proceedings against him or of assisting in his defense. He contends that these extradition proceedings form a critical step in the criminal prosecution of his client, and therefore the provisions of Chapter 1 of Title XXI of the Louisiana Code of Criminal Procedure (Mental Incapacity to Proceed) are applicable.
Interstate extradition of persons charged with crime in one state and found in another is provided for by the federal constitution and statutory authority. Art. IV, § 2 of the United States Constitution provides:
A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.
To implement this provision Congress has provided:
Wherever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. 18 U.S.C. § 3182.
The purpose of the Extradition Clause was expounded by the United States Supreme Court in Michigan v. Doran, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978):
... The Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed. Biddinger v. Commissioner of Police, 245 U.S. 128, 132-133, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917); Appleyard v. Massachusetts, 203 U.S. 222, 227, 27 S.Ct. 122, 123, 51 L.Ed. 161 (1906). The purpose of the Clause was to preclude any state from becoming a sanctuary for fugitives from the justice of another state and thus "balkanize" the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit, found in the immediately preceding clause of Art. IV. The Extradition Clause, like the Commerce Clause served important national objectives of a newly developing country striving to foster national unity. Compare Biddinger, supra, with McLeod v. Dilworth Co., 322 U.S. 327, 330, 64 S.Ct. 1023, 1025, 88 L.Ed. 1304 (1944). In the administration of justice, no less than in trade and commerce, national unity was *1111 thought to be served by de-emphasizing state lines for certain purposes, without impinging on essential state autonomy. Doran, supra, 99 S.Ct. at 534-535
Interstate extradition was intended to be a summary and mandatory executive proceeding in which it was never contemplated that an asylum state would conduct the kind of preliminary inquiry traditionally intervening between arrest and trial. Doran, supra, 99 S.Ct. at 535; Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917); In re Strauss, 197 U.S. 324, 25 S.Ct. 535, 49 L.Ed. 774 (1905).
The Louisiana statutes implementing the federal extradition provisions are found in Title VI of the Code of Criminal Procedure (C.Cr.P. Arts. 261-280). The Uniform Criminal Extradition Act provides the basis for the Louisiana provisions. The extradition process is initiated when the prosecuting officer or the executive authority of another state makes a written demand upon the governor of this state for the return of a person wanted in that state (La.C.Cr.P. Art. 263). After investigation of the extradition demand the governor of this state may issue a warrant of arrest if satisfied that the person sought should be surrendered (La.C.Cr.P. Arts. 264, 265).
A governor's grant of extradition is prima facie evidence that constitutional and statutory requirements have been met. Doran, supra, 99 S.Ct. at 535. Once the governor has granted extradition, a court considering release of a person arrested on a governor's warrant can do no more than decide:
(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable. Doran, supra.
In view of the limited nature of an extradition hearing[2] to determine the validity of an arrest, the competency of the person arrested would usually have no probative value. Accordingly, evidence of an accused's insanity at the time of the offense, as a matter relevant to his guilt or innocence, is properly excluded in any extradition proceeding. Similarly, it has generally been held that evidence introduced only for the purpose of showing present insanity by reason of which the accused is not capable of defending a charge of crime is properly heard by the court having jurisdiction of the crime. Annotation, Sanity or Insanity, or Pendency of Lunacy Proceedings as Matters for Consideration in Extradition Proceedings, 114 A.L.R. 693 (1938); Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); State ex rel. Davey v. Owen, 133 Ohio St. 96, 12 N.E.2d 144 (1937).
In the context of a Louisiana extradition, the issues which may be raised by the accused are even more narrowly circumscribed than those cited in Doran. La.C. Cr.P. Art. 268 provides in part:
A. The grounds for discharge at the extradition hearing are that:
(1) The accused is not the person mentioned in the governor's warrant, in the requisition, or in the judgment of conviction, sentence, indictment, information, or affidavit which is the basis of the requisition;
(2) The governor's warrant is not signed; or
(3) A requirement of Art. 263 has not been met.
B. The guilt or innocence of the accused as to the crime of which he is charged is not an issue at the hearing. Unless one of the grounds for discharge is *1112 proven, the accused shall, without further delay, be delivered into the custody of the designated agent of the demanding state.
* * * * * *
With the possible exception of the identity issue, the accused's competence and his ability to assist counsel will have no impact upon the resolution of these issues at the extradition hearing. Even should the accused in this instance raise the defense that he is not the person sought to be extradited, our review of the record, including a psychiatrist's report submitted by counsel for relator, shows that the accused is sufficiently aware of his identity and whereabouts at the time in question to participate in the extradition hearing. Relator's mental condition, regardless of the effect it may have on a defense to the merits of the Texas charge, has not rendered him unable to assist his counsel or to sufficiently understand the nature of the extradition proceedings to the degree required by the narrow grounds properly at issue. Compare Kostic v. Smedley, 522 P.2d 535 (Alaska 1974).
We are unable to agree with relator's contention that these extradition proceedings form a critical stage of a criminal prosecution. La.C.Cr.P. Art. 642 provides that the raising of a question as to a defendant's mental capacity to proceed halts all further steps in the criminal prosecution.[3] Louisiana courts have no jurisdiction over the crime with which relator is charged in Texas and cannot prosecute him for it. The extradition process by which persons are delivered to the state with jurisdiction over the crime "is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt." In re Strauss, supra, 25 S.Ct. at 537. To allow a person held for extradition to raise the full panoply of issues which will ultimately arise upon defense of the crime would unduly restrict and burden the extradition process and defeat the purpose of the intended summary procedure. In re Strauss, supra, 25 S.Ct. at 537. See also Pacileo v. Walker, 446 U.S. 1307, 100 S.Ct. 1633, 64 L.Ed.2d 221 (1980).
In view of the intended summary nature of extradition proceedings, the limited scope of issues relevant to the process in the asylum state, and the opportunity to raise the issue of mental incompetency in the demanding state, we hold that the trial court properly denied relator's motion for the appointment of a sanity commission. We are not faced with a situation in which the relator is so incompetent as to be totally unable to assist his counsel in ascertaining his identity as the person being sought in the demanding state.
For the reasons assigned the judgment is affirmed and the case is remanded to the trial court for further proceedings in accordance with law.
DENNIS, J., dissents with reasons.
WATSON, J., dissents.
NOTES
[*] Judges O. E. Price of the Court of Appeal, Second Circuit, G. William Swift, Jr., of the Court of Appeal, Third Circuit, and Fred W. Jones, Jr., of the Court of Appeal, Second Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., James L. Dennis, and Jack C. Watson.
[1] La.C.Cr.P. Art. 269 provides the means for an immediate arrest pending the arrival of formal extradition papers:

A judge may issue a warrant for the arrest of a person in this state, prior to a demand for extradition in conformity with Article 263, when on the oath or affidavit of a credible person, taken before a judge or clerk of court, the person to be arrested is charged with:
(1) Being a fugitive from justice of another state;
(2) Commission of a crime in another state; or
(3) Having been convicted of a crime in another state, and having escaped from confinement or having broken the terms of his bail, probation, parole, furlough, or reprieve.
In this article, "judge" means any judge of a district, city, or parish court with criminal jurisdiction.
[2] The revision comments to La.C.Cr.P. Art. 267 which delineates certain rights to be accorded the accused states in pertinent part:

This article retains Louisiana's procedure from former R.S. 15:166, whereby the judge is required to set an extradition hearing if the accused desires to test the legality of his arrest under the governor's warrant. This is simpler than the Uniform Extradition Act procedure, which requires an application for a writ of habeas corpus by the accused.
[3] Criminal prosecution is defined in La.C.Cr.P. Art. 381:

A criminal prosecution is brought in the name of the state in a court of criminal jurisdiction, for the purpose of bringing to punishment one who has violated a criminal law.
The person injured by the commission of an offense is not a party to the criminal prosecution, and his rights are not affected thereby.