Rockingham,
No. 5168.

ADRIAN E. HARDY *v.* MARTIN O. BETZ, *Chief of Police.*

Argued October 1, 1963.
Decided December 3, 1963.

*Boynton, Waldron & Dill* (*Mr. Wyman P. Boynton* orally), for the plaintiff.

*William Maynard*, Attorney General and *William J. O'Neil* (*Mr. O'Neil* orally), for the defendant.

DUNCAN, J. These proceedings relate to the support of a minor male child born April 29, 1953 in Boston, Massachusetts, shortly after his mother's removal thereto from Portsmouth, New Hampshire. Soon after the birth of the child the mother married, and has continued to reside in Boston. In 1962 as a result of a request for public support, a proceeding was brought in the Roxbury District Court in Massachusetts, seeking support for the child from the plaintiff herein under the provisions of the Uniform Reciprocal Enforcement of Support Act. RSA ch. 546. Following a hearing before the Superior Court in Rockingham County on November 26, 1962, the petition was denied upon the ground that the plaintiff herein was under no duty to support the child. See RSA 168:1 requiring a paternity charge to be instituted within one year of the birth of the child. Thereafter the proceedings culminating in the petition now before us were instituted.

The reserved case states that the plaintiff "has at no time seen [the mother of the child] since she departed from Portsmouth," that he denies that he is the father of the child, and that "he is not and never has been a fugitive from justice in the Commonwealth of Massachusetts." His application for a writ of habeas corpus alleges that he was not "within the Commonwealth of Massachusetts on the thirtieth day of May 1959 [the date alleged in the indictment] or any time subsequent thereto."

At the outset it may be pointed out that we are not concerned with the contention that the plaintiff is not a fugitive from justice. The requisition papers disclose that it is conceded that at the time of the commission of the alleged crime the plaintiff was in Portsmouth, and that it is alleged that acts committed by him in Portsmouth intentionally resulted in a crime in Massachusetts. The answer of the Commonwealth of Massachusetts to the plaintiff's petition clearly indicates that the extradition proceedings are grounded upon the provisions of section 6 of the Uniform Extradition Act. RSA ch. 612.

This section provides: "EXTRADITION OF PERSONS NOT PRESENT IN DEMANDING STATE AT TIME OF COMMISSION OF CRIME. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive author-

ity is making the demand, and the provisions of this chapter not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom." RSA 612:6. The recital in the warrant of the governor of this state that the plaintiff herein is "charged . . . with having fled from said Commonwealth of Massachusetts" may be regarded as surplusage and presents no issue for determination here. Additionally, no issue is presented with respect to the form of the requisition papers, which include the required copy of an indictment, and of an affidavit before a magistrate. RSA 612:3. *Loulakis* v. *Walker*, 103 N. H. 526.

The issue to be determined is whether a crime under the law of Massachusetts is substantially charged. RSA 612:3, *supra*; *Hinz* v. *Perkins*, 97 N. H. 114, 115; *Bracco* v. *Wooster*, 91 N. H. 413; Annot. 40 A. L. R. 2d 1151. Mass. G. L., *c*. 273, *s*. 15 provides in part: "Any father of an illegitimate child, whether begotten within or without the commonwealth, who neglects or refuses to contribute reasonably to its support and maintenance, shall be guilty of a misdemeanor." The section further provides that if there has been no final adjudication of paternity "the question of paternity shall be determined in proceedings hereunder." It thus appears that although it has never been determined that the plaintiff herein is the father of the minor child in question (*cf. State* v. *Tetreault*, 97 N. H. 260) the Massachusetts' statute provides for such determination upon trial of the indictment. Under the Massachusetts statute the offense alleged is a continuing one (*Vivori* v. *Fourth District Court of Berkshire*, 323 Mass. 336, 338), and establishment of paternity is not a prerequisite to indictment. *Commonwealth* v. *Gross*, 324 Mass. 123, 124.

The essential question before us is whether the indictment returned in Massachusetts can be held to charge a crime committed in that jurisdiction, when the affidavits establish that the plaintiff was not there present at the time of the crime for which he was indicted. By the sworn statement of the District Attorney for Suffolk District the plaintiff is charged with "having committed in Portsmouth, New Hampshire an act or acts intentionally resulting in the commission of said crime in this Commonwealth." The papers contain no specification of the nature of the "act or acts" so alleged to have been committed in this state, but it is plainly inferable that reliance is placed upon

"acts of omission" committed in this state which are claimed to have "intentionally resulted" in a crime in Massachusetts.

In support of extradition, the State relies upon *In re Harris*, 170 Ohio St. 151, where a similar petition for a writ of habeas corpus was denied in extradition proceedings originating in the State of Wisconsin. The court in that case addressed itself to the question, among others, of whether "neglect or refusal by one living in Ohio to provide for a child residing in Wisconsin" was the "committing" of "an act in this state"; (*Id.*, 157) and concluded that "intentionally" doing nothing in Ohio to support his child living in another state "when under the laws of such other state he is required to do so" was the commission of an act in Ohio "which intentionally results in a crime in such other state." *Id.*, 159.

We note however that the Court, in arriving at this conclusion, considered only the question of whether an act had been "committed" in Ohio, evidently finding no reason to discuss the further question of whether the act of omission in Ohio could result in a crime in Wisconsin. Whether the petitioner had been present in Wisconsin following birth of the child, so as to become subject to the legislative jurisdiction of that state, and to the operation of its laws imposing criminal liability for failure to support the child cannot be determined from the opinion.

In the case before us we are faced with different circumstances. It has already been found by the Superior Court in the 1962 proceedings that the plaintiff is under no duty here to support the child, his paternity never having been established. Under the law of this jurisdiction no obligation to support an illegitimate child exists where paternity has been neither established (*State* v. *Byron*, 79 N. H. 39) nor acknowledged. *State* v. *Cote*, 104 N. H. 345. See RSA 168:1 requiring a paternity charge to be instituted within one year of the birth of the child.

We come then to the question of whether Massachusetts can by legislative act impose upon a resident of New Hampshire, not present in Massachusetts, an obligation to support an illegitimate child in Massachusetts; and more particularly, impose criminal liability for failure to support such a child, when the father has never been within the jurisdiction of that Commonwealth so that it could impose such an obligation or liability upon him.

Many years ago in *Buchanan* v. *Rucker*, 9 East. 192 [K. B. 1808] Lord Ellenborough posed a like question in these words:

"Can the island of Tobago pass a law to bind the rights of the whole world?"; and concluded that judgment could not be entered against "one who never was present in or subject to the jurisdiction." *Id.*, 194. See, Stimson, Jurisdiction Over Out-of-State Defendants, 48 A.B.A. J. 725. "Convenience will not justify extraterritorial application of a state's law." *Id.*, 729.

The point is illustrated by the recent decision of *Clarke* v. *Blackburn* (Fla.), 151 So. 2d 325, where it was sought to extradite the plaintiff from Florida for failure to support his illegitimate child in North Carolina. Since the extradition papers failed to allege commission of an act in Florida intentionally resulting in a crime in North Carolina they were held insufficient under section 6 of the Uniform Extradition Law. RSA 612:6, *supra*.

The court then turned to the provisions of the Uniform Reciprocal Enforcement of Support Act to determine whether extradition might be had under the section permitting extradition without a showing that the alleged criminal was present in the demanding state at the time of commission of the crime. See RSA 546:5 (supp). Turning its attention to the provisions which appear in section 7 of the act (9 C.U.L.A., 1962 supp, *p.* 39 *s.* 7; RSA 546:7 (supp)) the court concluded that "the presence of the obligor is the key to determining which state's duties of support shall govern." Since the "obligor" was not present in North Carolina "during the period for which support is sought," and since Florida imposed no duty to support the illegitimate child, the court concluded that extradition should not be permitted. "To compel a resident of the State of Florida, who was present in the State of Florida during the period of time in question, to support a resident of another state according to the laws of that other state, would violate the Florida resident's right to equal protection of the laws." *Id.*, 329. See *Yarborough* v. *Yarborough*, 290 U. S. 202, 212; Note, 17 U. Pitt. L. Rev. 261, 268-269.

While in the case before us Massachusetts places no reliance upon the Uniform Reciprocal Enforcement of Support Act (Mass. G. L. 273A), and its enactment omits the extradition provisions found in ours (RSA 546:5 (supp)), civil enforcement of its statute is similarly restricted to duties of support under the law of any state "in which the alleged obligor was present during the period for which support is sought." Mass. G. L., *c.* 273A,

*s.* 4. See *Rosenberg* v. *Rosenberg,* 152 Me. 161.

The principles expressed in the Florida decision, *supra,* and in particular the conflict of laws principle written into sections 4 and 7 of the uniform act (RSA 546:4; RSA 546:7 (supp)), are considered controlling in this case. Since the plaintiff was never present in Massachusetts during the period for which support is sought, no obligation could arise under its laws, and he never became subject to its criminal laws.

While it may be said that the plaintiff's omission in New Hampshire to make provision for the child "results" in the child's nonsupport in Massachusetts, the same may equally be said of the failure of any other resident of New Hampshire to do so. The vital question is whether the plaintiff's nonaction here, where he is under no legal obligation to act, can "result" in crime in Massachusetts where at the time in question he admittedly has not been present, and neither acted nor failed to act. For reasons indicated, we think that it cannot so result.

"The criminal law of a state or nation has no operation or effect beyond its geographical or territorial limits." 1 Anderson, Wharton's Criminal Law and Procedure, *s.* 23. Restatement, Conflict of Laws, *s.* 457. See *Hartford* v. *Superior Court,* 47 Cal. 2d 447, 454. "The crime of failure to furnish support, however, is committed where the defendant should have furnished the support . . . if the defendant was once subject to the jurisdiction so that the obligation exists." 2 Beale, The Conflict of Laws, *s.* 428.4.

We do not understand that the courts of Massachusetts would take a different view. As the Massachusetts Supreme Court said in *Commonwealth* v. *Acker,* 197 Mass. 91, 93: "A *person domiciled in this Commonwealth* is amenable to the statute . . . his neglect of duty occurs here, without reference to a place where the proper performance of his duties would confer benefits." (Emphasis supplied). That criminal liability for nonsupport in Massachusetts is considered to depend upon the presence of the defendant in that jurisdiction, so as to be "subject during that period to its laws," may be gathered from *Commonwealth* v. *Herrick,* 263 Mass. 25, 26. See also, *Commonwealth* v. *Dornes,* 239 Mass. 592; *State* v. *Echavarria,* 101 N. H. 458, 459.

An order should be entered discharging the plaintiff from custody.

*Remanded.*

BLANDIN AND WHEELER, J.J., concurred; KENISON, C.J. and LAMPRON, J., dissented.

KENISON, C. J., *dissenting*: While the opinion discusses the application and construction of the Uniform Reciprocal Enforcement of Support Act in New Hampshire (RSA ch. 546 (supp)), Massachusetts, Maine and Florida, that act is not in issue in this proceeding and cases construing it and relied upon in the majority opinion are not in point, i.e., *Clarke* v. *Blackburn* (Fla.), 151 So. 2d 325; *Rosenberg* v. *Rosenberg*, 152 Me. 161. What is in issue is section 6 of the Uniform Extradition Law which has been adopted in New Hampshire, Massachusetts, and most states. It provides for the interstate rendition of a person committing an act in one state "intentionally resulting in a crime in the state whose executive authority is making the demand." RSA 612:6. This section specifically provides that it shall apply "even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

The majority opinion in effect holds that section 6 of the Uniform Extradition Law is unconstitutional and cannot be applied in support cases where it is most needed. If there was authority for this view in the rigid dogma of Beale (2 Beale, The Conflict of Laws, *s.* 428.4) or in the worry of Lord Ellenborough a century and a half ago ("Can the island of Tobago pass a law to bind the rights of the whole world?", *Buchanan* v. *Rucker*, 9 East. 192 [K. B. 1808]), it is not impressive today. *In re Harris*, 170 Ohio St. 151. The continuing crime of neglecting to support an illegitimate child in Massachusetts "whether begotten within or without the commonwealth" (Mass. G. L., *c.* 273, *s.* 15) is an extraditable offense under section 6 of the Uniform Extradition Law. RSA 612:6. Ehrenzweig, Conflict of Laws, *s.* 82 (1962).

LAMPRON, J., concurs in this dissent.