**Ex parte John Jackson WRAY, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67710.**

Court of Criminal Appeals of Texas.

Oct. 21, 1981.

Rehearing Denied Dec. 16, 1981.

Richard Frankoff, Houston, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

ONION, P. J., and TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Justice.

This is an extradition proceeding pursuant to applicable provisions of Article 51.13, V.A.C.C.P. The central contention appellant made below and reurges here is that he is not subject to the jurisdiction of the demanding state in he was not and has not been present in that state since the effective date of the legislative act denouncing as criminal the conduct he is alleged to have performed and, further, in that his conduct outside the demanding state did not cause the consequence the legislative act was designed to prevent or punish. We will hold the twofold contention is reserved to the courts of the demanding state and to the

Supreme Court of the United States and, therefore, will affirm the judgment remanding appellant to custody for extradition.

To test the legality of his arrest under the Governor's Warrant, appellant applied for a writ of habeas corpus and the habeas court conducted a hearing on his application, both conformably with Article 51.13, § 10, supra. The State introduced without objection to their authenticity a copy of the extradition papers—the Governor's Warrant and supporting instruments—and appellant testified. From those papers and his testimony we glean the following facts pertinent to the issue presented by appellant.

On August 1, 1979, appellant, then a married man, was residing with his wife Holly and their two year old son, John, IV, in Milwaukee, Wisconsin. Holly expressed her desire to divorce appellant; they physically fought for possession of John, IV; appellant won and left the residence with the child. He departed the State of Wisconsin and made his way with John, IV to Houston, arriving August 4, 1979. He located an apartment and obtained employment. Appellant said that thereafter he and John, IV remained in Houston, never leaving the State and never having any "physical contact at all" with the State of Wisconsin. Indeed, the parties stipulated:

"... that Mr. Wray has been here since August 4, 1979, and he has done a series of actions which probably make him a resident of the State, that he was residing here since that period of time with the intent to remain here and never return to the State of Wisconsin... [and] that his son was here with him until the time he was arrested."

Meanwhile, according to her affidavit as a complaining witness that she executed in Milwaukee October 6, 1980, to show cause for extradition, Holly tried unsuccessfully for the next twelve months to locate appellant. During this period she learned of enactment of legislation proscribing interference with custody of a child, but when she discussed her plight with a Milwaukee

County Assistant District Attorney she was informed that "because no custody order had been entered at the time the defendant took the child and fled the state, no criminal charges could be issued." For his part, the affidavit recounts, appellant made many long distance telephone calls to her residence and place of employment, and on several occasions called her collect from places in states other than Texas to demand transmittal of sums of money to him on what turned out to be the false representation that he would use it to return John, IV to her.

Effective August 1, 1980, Section 946.-715(1)(a) of the Wisconsin Statutes provided:

> "*946.715 Interference by parent with parental rights of other parent.* (1) Any parent, or any person acting pursuant to directions from the parent, who does any of the following is guilty of a Class E felony:
>
> (a) Intentionally conceals a minor child from the child's other parent;" [1]

On at least three occasions after August 1, 1980, Holly swore, appellant called collect to demand a specified amount of money for plane tickets or bus fare to return John, IV to her and, although she complied in each instance and on the last incident flew to Houston herself to take custody of the child, appellant never appeared.

Section 939.03(1)(c) of the Wisconsin Statutes, also set out in the application for requisition, provides:

> "*939.03 Jurisdiction of State over Crime.* (1) A person is subject to prosecution and punishment under the law of this state if:

(c) While out of this state, he does an act with intent that it cause in this state a consequence set forth in a section defining a crime." [2]

It was on substantially the factual and legal bases outlined, then, that after hearing argument of counsel the habeas court ordered appellant remanded to custody for extradition to Wisconsin. As already indicated in this there is no error.

■ By its terms Article 51.13, supra, and by reason of its supremacy the decision in *Michigan v. Doran*, 439 U.S. 282, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) bind the courts of an asylum state to a limited determination:

> "Whatever the scope of discretion vested in the governor of an asylum state..., the courts of an asylum state are bound by Art. IV, § 2, ... by § 3182, and, where adopted, by the Uniform Criminal Extradition Act. A Governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met... Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." *Id.*, U.S. at 288–289, 99 S.Ct. at 535.

Except as (a) was contested in ground of error one, which we find untenable for reasons stated in the margin,[3] appellant concedes all but (b).

---

1. The provision is set forth in the verified application for requisition presented to the Governor of Wisconsin by an affected Assistant District Attorney of Milwaukee County. That appellant was well aware of it is shown by his acknowledgement in his application for writ of habeas corpus that he "is charged with violation of Section 946.715(1)(a) of the Wisconsin Statute, Interference by Parent with Parental Rights of Other Parent...."

2. For similar provisions in Texas see V.T.C.A. Penal Code, § 1.04. Note also that Article 51.13, § 6, supra, authorizes the Governor of Texas to surrender any person charged in the demanding state "with committing an act in this State, or in a third State, intentionally resulting in a crime" in the demanding state "even though the accused was not in that State at the time of the commission of the crime, and has not fled therefrom."

3. In his application for requisition, the Assistant District Attorney of Milwaukee County refers to Section 946.715(1)(a), see note 1 and accompanying text *ante*, and, one other as being "of the Wisconsin Statutes of 1979." This,

Though *Michigan v. Doran* supra, concentrated on protecting a determination of probable cause to believe that offenses proscribed by the demanding state were committed by the accused made by one of its neutral judicial officers, id., U.S. at 289–290, 99 S.Ct. at 535–536, the controlling principles are just as applicable to a determination of whether the accused has been charged with a crime in the demanding state. "The [Extradition] Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial," *id.*, U.S. at 288, 99 S.Ct. at 535.

█ Here, among the supporting papers, is a felony warrant (and authorization for extradition) for the arrest of appellant. It names him, states the offense by its shorthand rendition as well as giving the section number of the statute violated, 946.-715(1)(a), alludes to a complaint by Holly Wray of crime committed "contrary to the above stated statutory section of the Wisconsin statutes," finds "that probable cause exists that the crime was committed by the Defendant" and commands that appellant be arrested. The warrant is signed by a Court Commissioner as Judge of the Circuit Court of Milwaukee County and dated August 28, 1980, and attached to it is the complaint by Holly. Thus, a judicial officer, an assistant district attorney, the Governor of Wisconsin and, prima facie, the Governor of Texas have found that appellant has been charged with a crime in the demanding state. Neither the habeas court

below nor this Court is authorized to overturn those findings, *Michigan v. Doran*, supra, and with respect to contentions that Wisconsin may not constitutionally prosecute and punish him for allegedly committing an offense against its law while he was outside its geographical boundaries, we hold that validity of the procedure is reserved to the courts of Wisconsin and to the Supreme Court. *Contreras v. State*, 587 S.W.2d 723, 724 (Tex.Cr.App.1979). The second ground of error is overruled.[4]

The judgment is affirmed and appellant is remanded to custody for extradition to the State of Wisconsin.

It is so ordered.

---

asserted appellant in his application for writ of habeas corpus, rendered the supporting extradition papers "defective" because all agree the provision did not become effective until August 1, 1980, and thus the application for requisition did not give "legally sufficient notice" of the crime charged against him. The "defect," if it is one, is of no moment for appellant does not dispute the existence and content of the statute on August 1, 1980, the date identified in the affidavit of complaining witness and the application for requisition as beginning of commission of the "continuing crime" of interference by parent with parental rights of other parent. The ground of error is overruled.

4. In support of his position appellant cites us to two decisions from other jurisdictions; for the contention that his conduct did not constitute "a continuous crime," *Fowler v. Ross*, 196 F.2d .25 (CADC 1952); that his actions did not cause in Wisconsin the consequence required by its statute, *Hardy v. Betz*, 105 N.H. 169, 195 A.2d 582 (1963). When making the inquiries they did, neither court had the benefit of the views expressed in and restraints imposed by *Michigan v. Doran*, supra; thus, they are not persuasive. But, as we understand his contentions and the opinion of the Court in *Ex parte Harrison*, 568 S.W.2d 339 (Tex.Cr.App.1978), also pre-*Michigan v. Doran*, an inquiry would be utterly fruitless.