**Ex parte Michael Wayne POTTER, Appellant.[1]**

**No. 246–00.**

Court of Criminal Appeals of Texas, En Banc.

June 28, 2000.

---

1. Although this case is styled *Potter v. State* in the Court of Appeals, we style it *Ex parte Potter,* as it is an appeal of a ruling on an application for writ of habeas corpus.

Frank M. Sheppard, Jr., Houston, for appellant.

Julie Klibert, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court, joined by PRICE, HOLLAND, JOHNSON and KEASLER, J.J.

Pursuant to a request from the Governor of the State of Michigan for the extradition of appellant, Texas Governor George W. Bush issued a warrant for appellant's arrest and delivery into the custody of Michigan officials. Appellant challenged the extradition in an application for writ of habeas corpus. In connection with his writ, appellant filed a Motion for a Hearing on Incompetency, alleging in part that he should not be extradited because he is not mentally competent to understand the extradition proceedings. The trial court refused appellant's request for a hearing to assess his alleged incompetence.

On appeal, appellant claimed he was entitled to a competency hearing in Texas

courts "to determine his mental competency to understand the extradition proceedings against him. . . ." *Potter v. State,* 9 S.W.3d 401, 403 (Tex.App.-Houston [14 th Dist.] 1999). Pointing to other jurisdictions that have addressed this issue, the Court of Appeals followed the approach taken by the Georgia Supreme Court in *Oliver v. Barrett,* 269 Ga. 512, 500 S.E.2d 908, 910 (1998), holding inquiry into the mental competency of the fugitive is limited to the specific fact-based questions at issue in an extradition proceeding about which the alleged fugitive could have knowledge. *Id.* at 403–04. After reviewing the habeas corpus record, the Court of Appeals concluded that appellant did not contend, nor did the record reflect, that appellant was unable to assist his counsel in determining the limited issues about which he would have knowledge. *Id.* at 404.

■ We granted appellant's petition for discretionary review to determine whether

"due process require[s] that an accused challenging extradition . . . have sufficient mental competency to understand the nature of the extradition proceedings and consult with and assist his attorney." While even the State seems to agree that competency ought to be addressed when raised, the parties disagree on the level of competency required. The State urges adoption of the limited approach adopted by the Court of Appeals. Appellant appears to argue for a broader notion of competency, like that required in the context of standing trial.[2] Appellant argues that "the defendant must have sufficient mental competency to understand the nature of these proceedings against him, and to consult with an[d] assist counsel."

■ Article IV, Section 2 of the United States Constitution establishes the basis for extradition of fugitives between states:[3]

A Person charged in any State with Treason, Felony, or other Crime, who

---

**2.** In *Drope v. Missouri,* 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the Supreme Court reiterated and reaffirmed the standard it set forth in *Dusky v. United States:*

It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.

Accordingly, as to federal cases, we have approved a test of incompetence which seeks to ascertain whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." (quoting *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). Texas has codified this standard in Texas Code of Criminal Procedure article 46.02, § 1(a).

Appellant also claimed before the trial court and the Court of Appeals that he should not be extradited because he is incompetent to stand trial. The Court of Appeals did not address this issue apart from the question of appellant's competence to be extradited and neither of the parties complain about that

failure before this Court. The Court of Appeals, however, correctly cited *Charlton v. Kelly,* 229 U.S. 447, 462, 33 S.Ct. 945, 57 L.Ed. 1274 (1913), in which the Supreme Court discussed the exclusion of evidence of the accused's insanity, noting that if the evidence pertained to the accused's present ability to defend against the allegations or his insanity at the time of the commission of the crime, it should be heard by the court in the jurisdiction of the crime. *See also Oliver,* 500 S.E.2d at 910 n. 1 (noting that claim of incompetence to stand trial is not cognizable in extradition context and would have to be raised in demanding state, citing *Charlton v. Kelly, supra*); *In re Hinnant,* 424 Mass. 900, 678 N.E.2d 1314, 1318 n. 13 (1997) (noting it would be inappropriate for asylum court to address competency to stand trial issues, if raised in extradition context). The issue on which we granted review pertains only to the issue of an accused's competence to understand the extradition proceedings.

**3.** The Extradition Clause is implemented by the Uniform Criminal Extradition Act, which has been adopted by Texas. Tex.Code Crim. Proc. art. 51.13; *see also State ex rel. Holmes v. Klevenhagen,* 819 S.W.2d 539, 542 n. 7 (recognizing article 51.13 as adoption of Uniform Criminal Extradition Act).

shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

In view of the constitutional mandate for extradition, the United States Supreme Court has recognized that extradition proceedings were intended to be limited in scope in order to facilitate a swift and efficient transfer of custody to the demanding state:

> Interstate extradition was intended to be a summary and mandatory executive proceeding derived from the language of Art. IV, § 2, cl. 2, of the Constitution. . . . The Clause never contemplated that the asylum state was to conduct the kind of preliminary inquiry traditionally intervening between the initial arrest and trial. . . . [Extradition] "is but one step in securing the presence of the defendant in the court in which he may be tried, and in no manner determines the question of guilt."

*Michigan v. Doran*, 439 U.S. 282, 288, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) (citations omitted)(quoting *In re Strauss*, 197 U.S. 324, 332–33, 25 S.Ct. 535, 537, 49 L.Ed. 774 (1905)). Thus, the courts in the asylum state are bound to make a limited determination:

> Whatever the scope of discretion vested in the governor of an asylum state . . . , the courts of an asylum state are bound by Art. IV, s 2, . . . by s 3182, and, where adopted, by the Uniform Criminal Extradition Act. A Governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. . . . Once the governor has granted extradition, a court considering release on habeas corpus *can do no more than decide* (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

*Doran*, 439 U.S. at 289, 99 S.Ct. 530 (emphasis added); *see also State ex rel. Holmes v. Klevenhagen*, 819 S.W.2d 539, 542–43 (Tex.Crim.App.1991)(habeas judge had no authority to consider "equitable issues" in context of extradition hearing since "only the four issues outlined in [*Doran*] were for proper consideration"); *Wray v. State*, 624 S.W.2d 573, 575 (Tex.Crim.App.1981)(article 51.13 and *Doran* "bind the courts of an asylum state to a limited determination").

■ The Texas Uniform Extradition Act recognizes that a person arrested pursuant to an extradition warrant "has the right to demand and procure legal counsel." TEX.CODE CRIM. PROC. art. 51.13 § 10. And we have held that indigents are entitled to appointed counsel in this context, despite the absence of an express provision in the Extradition Act providing for such appointment. *Ex parte Turner*, 410 S.W.2d 639, 640 (Tex.Crim.App.1967).

■ The Texas Extradition Act further provides that such person or his lawyer may "test the legality of his arrest." TEX. CODE CRIM. PROC. art. 51.13 § 10; *see also Turner*, 410 S.W.2d at 641 (recognizing defendant's right under Extradition Act to "be granted a hearing at which he may, with the assistance of counsel, test the legality of his arrest under the Governor's Warrant"). Thus, a petitioner may contest his extradition in a writ of habeas corpus on the basis of any of the four issues identified by the Supreme Court in *Doran*, and would be entitled to discharge if successful in his defense. *See Ex parte Sanchez*, 642 S.W.2d 809, 811 (Tex.Crim.App. 1982) (stating that if extradition documents do not meet requirements of Extradition Act or constitution, rendition warrant should not issue and applicant would be entitled to discharge).

■ The question presented in this case-whether due process requires that an accused challenging extradition have suffi-

cient mental competency to understand the nature of the proceedings and consult with and assist with his attorney-is one of first impression before this Court. Several other state courts have addressed the issue and, while not binding, they may provide some useful insight. Kentucky appears to stand alone in holding that competency in the context of extradition proceedings is simply not relevant.[4] *Kellems v. Buchig-nani,* 518 S.W.2d 788 (Ky.1974). All other state jurisdictions that we are aware of having addressed the issue have held that due process requires some level of mental competence on the part of the fugitive in the extradition context.[5] *Kostic v. Smedley,* 522 P.2d 535, 538 (Alaska 1974); *Pruett v. Barry,* 696 P.2d 789, 793 (Colo. 1985); *Oliver,* 500 S.E.2d at 910; *State v. Tyler,* 398 So.2d 1108, 1112 (La.1981); *In*

---

**4.** The court in *Kellems* disposed of the issue in a single sentence: "After careful review of the records and the briefs, this court is of the opinion that the question of the mental competence of a fugitive in extradition proceedings is not relevant." *Kellems,* 518 S.W.2d at 788 (citing *Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913) and *State ex rel. Davey v. Owen,* 133 Ohio St. 96, 12 N.E.2d 144 (1937)). Four justices concurred without opinion. Another justice issued a strenuous dissenting opinion, arguing that the fugitive ought to have the degree of mental competence necessary to participate rationally in the limited nature of the extradition proceedings. *Kellems,* 518 S.W.2d at 789 (Palmore, J., dissenting). He was joined in this dissent by another justice.

Neither of the cases cited by the court in *Kellems* support its holding. *Charlton v. Kelly* is discussed in footnote 2, *supra.* In *Owen,* the question was whether lunacy proceedings concerning the alleged fugitive's present sanity that were ongoing in a probate court would prevent extradition. *Owen,* 12 N.E.2d at 147. Noting that the probate court's proceedings were civil and involved standards that differed substantially from an assessment of sanity in the context of a criminal trial, and noting the Supreme Court's holding in *Charlton v. Kelly,* the Ohio court held the probate court's proceedings would not deter the extradition. While the question of the accused's present sanity was apparently in issue in an ongoing civil proceeding, his competence *to understand the extradition proceedings* was never raised or discussed.

**5.** There is little from the federal courts on this issue. The First Circuit Court of Appeals has held that due process does not require a competency hearing in the extradition context, at least where they were not presented with a claim "that petitioner is catatonic, has lost all contact with reality, or is totally unable to communicate." *Romeo v. Roache,* 820 F.2d 540, 544 (1 st Cir.1987)(where petitioner described as having history of past drug abuse, exhibiting paranoid ideas, but being oriented to time, person, and place and recent and remote memory were in tact, court held "due

process does not require a competency hearing in extradition proceedings, at least absent a more severe condition than the one described in the doctor's report").

In his dissenting opinion, Judge Womack relies on *Lopez–Smith v. Hood,* 121 F.3d 1322 (9 th Cir.1997), as holding that due process does not require a competency hearing in the extradition context. *Dissenting opinion* at 299 n. 3. But the issue in *Lopez–Smith* was one of *competency to stand trial* and the court never clearly distinguished that question from the question of a petitioner's *competency to be extradited. See* n.2, *supra.* From the outset, the court framed the issue as whether the petitioner's *competency to stand trial* could defer his extradition:

> This case raises several issues of the law of extradition. Most notably, the question arises whether mental deficiencies which would render a person incapable of standing trial entitle him to deferral of extradition.

*Id.* at 1323. Before the magistrate on his petition for a writ of habeas corpus, the petitioner was allowed "to make an offer of proof that he was incompetent to stand trial." *Id.* at 1324. Further examination of the court's reasoning reveals that it was concerned with the petitioner's competence to stand trial, as distinguished from the more limited issue of competence to assist in defending on the extradition matter:

> Application of the ordinary procedures for persons incompetent to stand trial would interfere with the President's power to honor extradition treaties by delivering to their custody persons charged in foreign counties with crimes. Nor is it clear that incompetence to assist in one's defense, important in an adversarial system of justice, matters as much in the inquisitorial system one ordinarily finds in non-English speaking countries.

*Id.* at 1325. Competence to assist in one's defense in the court of the demanding country (i.e., competence to stand trial) is a separate issue from competence to be extradited. *See* n. 2, *supra.*

*re Hinnant,* 424 Mass. 900, 678 N.E.2d 1314, 1318 (1997); *People v. Kent,* 133 Misc.2d 505, 507 N.Y.S.2d 353, 355–56 (N.Y.Sup.Ct.1986); *State ex rel. Jones v. Warmuth,* 165 W.Va. 825, 272 S.E.2d 446, 451 (1980). These courts reason that in order to give meaning to the right to demand and procure counsel and the right to test the legality of arrest, due process requires that the alleged fugitive have sufficient mental competence to consult with his attorney regarding the proceedings.[6] *Hinnant,* 678 N.E.2d at 1319; *Kent,* 507 N.Y.S.2d at 355–56; *Pruett,* 696 P.2d at 793; *Warmuth,* 272 S.E.2d at 451; *Kostic,* 522 P.2d at 537–38.

Among these courts, there is a split as to the degree of the competence required. Most of these jurisdictions apply the same standard mandated by the United States Supreme Court in the context of determining competency to stand trial, holding that due process requires that an alleged fugitive have sufficient mental competency to understand the extradition proceedings and consult with and assist his counsel. *Kostic,* 522 P.2d at 538; *Pruett,* 696 P.2d at 793; *Hinnant,* 678 N.E.2d at 1318; *Kent,* 507 N.Y.S.2d at 355–56; *Warmuth,* 272 S.E.2d at 451. This is a very broad notion of competency. Two states have adopted the "middle of the road" approach assumed by the Court of Appeals in the instant case. *Oliver,* 500 S.E.2d at 910; *Tyler,* 398 So.2d at 1112. With an eye toward the limited issues before the habeas court in the extradition context, these courts maintain that the accused's mental competence need not extend beyond the issues on which the habeas court has authority to act and about which the accused

may have knowledge helpful to his attorney in his defense:

> ... *Doran* limits the inquiry in an extradition proceeding to four issues.... Of these four issues, a petitioner's mental competence realistically impacts only upon the last two-identity and fugitive status. Thus, where, as here, a petitioner in an extradition proceeding claims he is mentally incompetent, the habeas court need only determine whether the petitioner is sufficiently competent to assist counsel at ascertaining his identity and whereabouts at the time of the crime.

*Oliver,* 500 S.E.2d at 910 (citations omitted).

We agree with the majority of states to the extent they recognize that in order to give effect to a petitioner's right to counsel and his right to test the legality of his arrest in the extradition context, he must be sufficiently competent to consult with his counsel. Given that an alleged fugitive is entitled to counsel and entitled to challenge the legality of his arrest and assert defenses on the basis of which the extradition warrant may be dismissed, the accused must be sufficiently competent to discuss with his counsel facts relating to the limited defenses that may be raised. *See Hinnant,* 678 N.E.2d at 1319; *Kent,* 507 N.Y.S.2d at 355–56; *Pruett,* 696 P.2d at 793; *Warmuth,* 272 S.E.2d at 451; *Kostic,* 522 P.2d at 537–38; *cf. Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)(due process requires access to basic materials integral to building of effective defense). Counsel cannot provide effective representation absent the ability to consult with the alleged fugitive

---

**6.** Some of these decisions are based in part on the notion that extradition involves a deprivation of liberty and therefore habeas corpus proceedings challenging extradition are criminal in nature. *Hinnant,* 678 N.E.2d at 1319; *Kent,* 507 N.Y.S.2d at 355; *Warmuth,* 272 S.E.2d at 449. These courts reason that

> Once it is recognized that an extradition proceeding does involve incarceration in the asylum state pending a determination of

certain key issues, the right to the effective assistance of counsel become apparent. Because an insane person may not possess sufficient rationality to comprehend the nature of the proceedings and to consult and communicate with his counsel, courts have viewed this type of insanity to foreclose the effective assistance of counsel.

*Warmuth,* 272 S.E.2d at 450.

regarding potential defenses about which he may have knowledge.[7] But, like the Court of Appeals in this case, we are persuaded that the "middle of the road" approach best addresses these rights of the alleged fugitive *within the limited context of an extradition proceeding.*

As mentioned previously, a habeas court "can do no more" than decide four specific issues in the extradition context. *Doran,* 439 U.S. at 288–89, 99 S.Ct. 530; *see supra* at 294–95. A petitioner could conceivably have knowledge of facts relating to two of these issues: (1) whether the petitioner is the person named in the request for extradition (identity); and (2) whether the petitioner was in the demanding state at the time of the alleged offense (presence).[8] *Oliver,* 500 S.E.2d at 910; *Warmuth,* 272 S.E.2d at 451. Where the fugitive's incompetence prevents him from being able to consult with his counsel in connection with the issues of his identity and presence, those defenses may be foreclosed.

A broader understanding of the proceedings and a greater ability to consult with his attorney is not necessary in light of the summary nature of an extradition and the narrow role of the asylum court as articulated by the Supreme Court in *Doran.* Maintaining a narrow focus in ascertaining competency in the extradition context will ensure that the proceedings are attended to as efficiently and quickly as possible. The Court of Appeals correctly held, and we now hold, that in the context of extradition proceedings, due process requires that the alleged fugitive has sufficient mental competency to consult with and assist his attorney on the issues of identity and presence.

The Court of Appeals further held that because appellant does not contend he is too incompetent to be of any assistance to his counsel on the issues of identity or presence and because the record before that Court did not support such claims, appellant was not entitled to relief. Appellant's claim of incompetency is a general one, and does not foreclose an inability to be of assistance on the issues of identity and presence. We will not fault appellant for failing to be specific as to the extent of his incompetence, in light of the lack of precedence on the issue.[9] Accordingly, we remand to the habeas court for a determination of whether appellant sufficiently raised an issue of his mental incompetency to warrant a hearing.[10] If appel-

---

7. Where a criminal review process is granted by a state as a matter of right, rather than discretion, and the defendant is entitled to counsel in such proceedings, due process of law requires that he have the benefit of *effective* representation. *Evitts v. Lucey,* 469 U.S. 387, 393–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, in the extradition context, where an alleged fugitive has a right to challenge the legality of his arrest and the right to counsel in doing so, he is entitled to effective representation.

8. "Fugitive means presence in the demanding state when the crime was allegedly committed." *Moncrief v. Anderson,* 342 F.2d 902 (D.C.Cir.1964).

9. Appellant relied on the majority of jurisdictions which allow a broader inquiry than we hold is necessary.

We note that appellant's challenge to his extradition involves the first two grounds identified in *Doran,* and does not challenge the issues of presence and identity, the grounds on which we hold incompetency may have some bearing. However, given that appellant's competency has not been settled, it cannot be assumed that counsel has sufficiently conferred with appellant regarding presence and identity to be in a position to challenge those issues.

10. A bare, unsupported claim of mental incompetency will not be sufficient to raise the issue and warrant a hearing. Some guidance may be had on this question by reference to cases concerning incompetency to stand trial. In *Collier v. State,* 959 S.W.2d 621, 625 (Tex. Crim.App.), *cert. denied,* 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998), we explained that a hearing on competency to stand trial is called for only if evidence brought to court's attention raises "a *bona fide* doubt in the judge's mind as to the defendant's competency." A *bona fide* doubt is raised "only if the evidence indicates recent severe mental illness, at least moderate mental retardation, or truly bizarre acts by the

lant has sufficiently raised the issue, he will be entitled to a hearing for the determination of his mental competency, based on the standard set forth in this opinion. Given the summary nature of extradition proceedings and the lack of any statutory guidance regarding a competency determination in this unique context, a jury need not be empaneled for the purpose of such hearing. A determination by the habeas court will suffice.[11]

The portion of the Court of Appeals' opinion affirming the judgment of the habeas court is vacated and this cause is remanded to the habeas court for the purpose of addressing the issue of appellant's alleged mental incompetency.

MANSFIELD, J., delivered a dissenting opinion, joined by McCORMICK, P.J.

WOMACK, J., delivered a dissenting opinion.

KELLER, J., not participating.

MANSFIELD, J., delivered the dissenting opinion in which McCORMICK, P.J. joined.

I respectfully dissent. In my opinion, the issue of the fugitive's competency in the context of extradition proceedings is irrelevant, as held by the Supreme Court of Kentucky in *Kellems v. Buchignani,* 518 S.W.2d 788 (Ky.1974). The question of competency is best addressed in the context of whatever proceedings take place once extradition is completed and the fugi-

tive has been successfully returned to the state that demanded his extradition.

We should defer to the discretion of the governor in matters of extradition and any review should be limited to the four issues as set forth in *Michigan v. Doran,* 439 U.S. 282, 288, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978).

WOMACK, J., filed a dissenting opinion.

The decision whether, and to what extent, the Due Process Clause requires a competency hearing in a rendition proceeding requires consideration of the interests that are involved.

> Whether any procedural protections are due depends on the extent to which an individual will be "condemned to suffer grievous loss." The question is not merely the "weight" of the individual's interest, but whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment. Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as

defendant." *Id.; see also Reeves v. State,* 516 S.W.2d 410 (Tex.Cr.App.1974)(if evidence from any source is "sufficient to create in the judge's mind a reasonable ground to doubt the competency of the accused to stand trial he should conduct a hearing out of the presence of the jury to determine whether or not there is in fact an issue as to the competency of the accused to stand trial" but "mere suggestion in a motion by counsel coupled with a request for a psychiatric examination has been held to be insufficient to raise a reasonable doubt concerning a defendant's competency to stand trial").

11. While normally we refrain from comment on issues not technically raised before us, we comment here in the spirit of avoiding further delays in this extradition matter. As mentioned previously, when incompetency is raised in the extradition context, the habeas court may be guided to some extent by the law governing proceedings concerning incompetence to stand trial. But the habeas court should keep in mind that extradition proceedings are intended to be summary in nature, and the interests of the parties may differ from the interests at issue in a trial setting.

of the private interest that has been affected by governmental action."[1]

The appellant has a liberty interest in remaining in the asylum state. Against this interest we must balance the undoubted requirement of the Constitution that the rendition of a person who is wanted in another state is to be a summary procedure. "To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2."[2] When he reaches the demanding state and enters the criminal proceedings, the appellant's much greater interests under the Sixth Amendment will be protected by the availability of competency proceedings in that forum. On balance, I think the competency determinations that the district court and the court of appeals made were sufficient to protect the appellant's interest.

I respectfully suggest that, in construing the requirements of the federal constitution, we should give more consideration to the views of the federal courts.

Two federal courts of appeals have considered the question before us; both have decided that a competency hearing is not part of due process of law in an extradition proceeding.[3] Both courts have relied on the decision of the Supreme Court in *Charlton v. Kelly.*[4]

Today the Court says *Charlton v. Kelly* need not be considered because the question in that case was "the accused's present ability to defend against the allegations or his insanity at the time of the commission of the commission of the crime," while we are considering "only ... the issue of an accused's competence to understand the extradition proceedings."[5] The federal courts have not found this distinction persuasive.

In *Charlton v. Kelly,* the Supreme Court noted that "impressive evidence of the insanity of the accused" had been excluded at an extradition proceeding. The Court concluded habeas relief was not warranted, however, stating, "If the evidence was only for the purpose of showing present insanity by reason of which the accused was not capable of defending the charge of crime, it is an objection which should be taken before or at the time of his trial for the crime, and heard by the court having jurisdiction of the crime."

Petitioner argues that the due process and Sixth amendment right to counsel argument he is raising now was never specifically addressed in *Charlton* and hence *Charlton* is not controlling. ...

It is true, as petitioner contends, that the Supreme Court in *Charlton v. Kelly* did not expressly address the due process argument petitioner raises. Petitioner is wrong, however, to read *Charlton* as holding nothing more than that a statute discussed in *Charlton* had conferred no right to present evidence of insanity. Rather, the tenor of *Charlton* was that in view of the limited function of extradition proceedings—extradition proceedings were not to be regarded as a final trial at which guilt or innocence would be determined but rather as but a preliminary examination to determine whether a sufficient case had been made to justify holding the accused to answer the charge against him—and the limited

---

**1.** *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (citations omitted).

**2.** *Michigan v. Doran,* 439 U.S. 282, 290, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978).

**3.** *See Lopez–Smith v. Hood,* 121 F.3d 1322 (9th Cir.1997); *Romeo v. Roache,* 820 F.2d 540 (1st Cir.1987).

**4.** 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). *See Lopez–Smith,* 121 F.3d at 1324–25; *Romeo,* 820 F.2d at 543–44.

**5.** *Ante* at 293 n. 2.

scope of review of extradition matters in habeas corpus proceedings, competency was a matter to be determined by the jurisdiction trying the offense and not by the extraditing jurisdiction.

... Given the limited purpose of extradition proceedings and the tenor of the *Charlton* case, we conclude due process does not require a competency hearing in extradition proceedings, at least absent a more severe condition than the one described in the doctor's report.[6]

I agree with the federal courts of appeals and our court of appeals that the Due Process Clause does not require a hearing in this case.

---

**6.** *Romeo,* 820 F.2d at 543–44 (citations omitted).