# NO. 12-08-00367-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *EX PARTE:* | § | *APPEAL FROM THE SECOND* |
|  | § | *JUDICIAL DISTRICT COURT OF* |
| *DAVID GEORGE BAUGH* | § | *CHEROKEE COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

David George Baugh appeals from a trial court order denying him relief on his application for writ of habeas corpus and granting the State's request to extradite him to the State of Missouri. In ten issues, Appellant argues that the trial court should have granted one or both of two habeas applications filed on his behalf and raises other due process complaints. We affirm.

### BACKGROUND

Appellant was convicted twice in Missouri of the offense of driving without a valid license. *See* MO. REV. STAT. § 302.020 (LexisNexis 2008). The offenses were felonies under Missouri law because Appellant had three prior convictions for the same offense. *See* MO. REV. STAT. § 302.020.3 (LexisNexis 2008). He was sentenced to three years for one offense and two years for the other with the sentences to be served consecutively.

In 2007, Appellant was released from prison in Missouri and placed on parole. Appellant obtained a driver's license and informed the parole authorities that he would be traveling to Texas despite their requirement that he obtain prior approval before leaving the state. Appellant came to the attention of the authorities in Rusk County, Texas when they arrested him for the misdemeanor offense of failure to identify. They communicated with the parole authorities in Missouri, which

eventually lead to the Missouri governor's issuing a governor's warrant for Appellant. After reviewing the documents, and in accordance with an interstate compact on extradition, Texas Governor Rick Perry then issued a governor's warrant commanding Texas sheriffs and other peace officers to apprehend Appellant so that he could be returned to Missouri.

Before the governor's warrants were obtained, a third party who is not a lawyer filed an application for a writ of habeas corpus on Appellant's behalf. A hearing was held on that application on June 6, 2008. The trial court denied relief. Appellant did not appeal from that decision. Appellant filed a second application for writ of habeas corpus on August 12, 2008.

The trial court held a further hearing on September 3, 2008. At that hearing, the State presented evidence including warrants from the governors of Texas and Missouri as well as expert testimony that Appellant was the person sought by the State of Missouri. At the conclusion of the hearing, the trial court "granted" the extradition, effectively denying relief on Appellant's second application for writ of habeas corpus. This appeal followed.

## EXTRADITION

In ten issues, Appellant argues that the trial court should have granted relief on his first application for writ of habeas corpus, that cumulative errors entitle him to relief, and that the trial court set bail in an unreasonable amount.

### Applicable Law

Extradition between the states is intended to be a summary and mandatory executive proceeding derived from Article IV, Section 2, Clause 2 of the United States Constitution. *See Ex parte Potter*, 21 S.W.3d 290, 294 (Tex. Crim. App. 2000). Consistent with that principle, Texas has adopted into its law the Uniform Criminal Extradition Act. *See* TEX. CODE CRIM. PROC. ANN. art. 51.13 (Vernon 2006); *Potter*, 21 S.W.3d. at 294 n.3. Article 51.13 sets out the procedure for returning fugitives to the requesting states. It also allows for the detained persons to file an application for a writ of habeas corpus to challenge their detention. *See* TEX. CODE CRIM. PROC. ANN. art. 51.13, § 10.

If an application is filed, the trial court must determine if the prisoner is to be released. A governor's warrant is prima facie evidence that the constitutional and statutory requirements for

2

extradition have been met. ***Potter***, 21 S.W.3d at 294. Once the governor has signed the warrant, the trial court can do no more than decide 1) whether the extradition documents on their face are in order, 2) whether the person has been charged with a crime in the demanding state, 3) whether the person is the person named in the request for extradition, and 4) whether the petitioner is a fugitive. ***Id***. (citing ***Michigan v. Doran***, 439 U.S. 282, 289, 99 S. Ct. 530, 535, 58 L. Ed. 2d 521 (1978)); ***Ex parte Hearing***, 125 S.W.3d 778, 781 (Tex. App.–Texarkana 2004, no pet.).

## The First Application for Writ of Habeas Corpus

Appellant's first seven issues pertain to the hearing held on the first application for writ of habeas corpus filed on Appellant's behalf by a third party. Appellant did not appeal from that adverse ruling, and the notice of appeal is not timely to raise those issues because it was filed several months after the ruling. *See* TEX. R. APP. P. 26. Even so, the issues he raises—the sufficiency of the evidence, whether the trial court considered his testimony and the testimony of his witness, both of whom refused to take an oath, whether the trial court should have granted a continuance, whether there was probable cause to arrest him, and whether he should have been released to bail—are rendered moot by the later hearing held on his second application for writ of habeas corpus after receipt of the governor's warrant. In other words, whether Appellant should have been released before receipt of the governor's warrant is not a live question or controversy because Appellant is not being presently restrained by whatever justification was used prior to the issuance of the governor's warrant. *See*, *e.g.*, ***Ex parte Lipshitz***, 59 Tex. Crim. 179, 182, 127 S.W. 817, 819 (Tex. Crim. App. 1910) (Prisoner is held by authority of the governor's warrant after its issuance.). Furthermore, none of the first seven issues relate to whether the extradition documents are in order, whether Appellant is charged with a crime, whether he is the person charged, or whether he is a fugitive. *See* ***Potter***, 21 S.W.3d at 294. Accordingly, we dismiss Appellant's first, second, third, fourth, fifth, sixth, and seventh issues.

## Due Process

In his eighth and ninth issues, Appellant argues that eleven actions by the trial court constitute a cumulative violation of his due process rights. Six of these actions occurred during the hearing on Appellant's first application for writ of habeas corpus. Because Appellant did not appeal from the denial of relief on his first application, we do not consider Appellant's complaints about

the first six actions of the trial court.

Appellant also complains that the trial court spoke to him in a demeaning manner. We have reviewed the trial court's comments to Appellant at the hearing on his second application for writ of habeas corpus. The comments came at the conclusion of a lengthy hearing during which Appellant and the trial court had a frank and wide ranging discussion about the law. Appellant's position was that he was free to leave the State of Missouri because he had written a letter to his parole officer telling him that he would be traveling to Texas and he had not heard any response. Appellant also maintained that the judgment in his case was "void and a void judgment requires no obedience, it can be ignored." The trial court disagreed with Appellant and told him so. In any case, Appellant was represented by counsel and did not object to the trial court's statements. Therefore, there is no complaint preserved for our review. *See* TEX. R. APP. P. 33.1.

Appellant also complains that the trial court erred by not granting him a continuance of the hearing on his second application. We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Ex parte Taylor*, 531 S.W.2d 333, 334 (Tex. Crim. App. 1975). Appellant argued that a medical condition prevented him from being prepared for the hearing. The trial court was in the best position to evaluate his claim, and the record does not show an abuse of discretion.

The ninth and tenth actions by the trial court relate to the setting of an appeal bond, which we will address in the next section. Finally, Appellant argues that the trial court denied him the opportunity to "develop factual defenses to the allegations against him." It is not clear what opportunity was denied to Appellant. He was provided with counsel, and counsel never informed the court that he needed more time to develop any factual defenses. Appellant has not advanced or developed any factual defenses on appeal. Accordingly, we find no error in this regard. We overrule Appellant's eighth and ninth issues as they pertain to the hearing on his second application, and dismiss those that pertain to his first application.

## Bail on Appeal

In his tenth issue, Appellant complains that the bail set by the trial court is excessive. The trial court ordered that Appellant could be released on an appeal bond if he posted $500,000 cash. Article 44.35, Texas Code of Criminal Procedure, provides that a defendant in a habeas proceeding is to be allowed bail, except in capital cases where the proof is evident. The court of criminal

4

appeals has held that statute, which is mandatory, applies to persons appealing from a denial of habeas corpus relief. *See Ex parte Quinn*, 549 S.W.2d 198, 200 (Tex. Crim. App. 1977).[1]

When setting bail, a court is required to consider the nature of the offense, the circumstances under which the offense was committed, and the safety of the victim and the community. TEX. CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005). The court is also to set bail sufficiently high to ensure compliance, but also to consider the prisoner's ability to make a bond and to ensure that the power to require bail does not become an "instrument of oppression." *Id*.

Applying these standards was not easy for the trial court in this case. On one hand, there are factors that would support a lower bail. Appellant appears to have no means to post a bond, and the danger to the community and the level of offense are on the low side because he was convicted of driving without a valid license. On the other hand, the trial court could have no assurance that Appellant would appear voluntarily to be extradited if an unfavorable judgment and mandate issued from this court. First, Appellant is a fugitive from the State of Missouri. Second, Appellant does not feel compelled to follow laws or rules he thinks are not correct. His difficulties that form the basis of this case are an apt illustration of his thought process. Appellant considered the Missouri state law requiring him to get a driver's license to be improper. He registered his protest by persistently violating that law. He was convicted of driving without a valid license in May 1997, January 1998, and September 1998. Because of these three convictions, he was charged with felony offenses when he was arrested for the same offense in March 2000, January 2001, and July 2002. He was found guilty of the first two offenses and given consecutive prison sentences.

Appellant told the court that he had changed his mind about driver's licenses, and that he now had one. But his position that he need not follow rules that he did not agree with did not change. For example, Appellant took the position that he did not need to follow the conditions of his parole because he now had a driver's license and so there was no reason to supervise him,[2] and because he

---

[1] In *Quinn*, the court disagreed with an attorney general opinion that bail could be denied once a governor's warrant had been issued. *Quinn*, 549 S.W.2d at 200–01.

[2] In a letter to parole officials Appellant wrote:

What law (the only one) did I allegedly violate? Section 302.020, RSMO, operating a motor vehicle without a valid license, right? Well, since I have now applied for, obtained, and possess a valid driver's license, and

5

had refused to accept any conditions on his release. He maintained that he had visited his parole officer in Missouri as a courtesy and that he could ignore a judgment if he determined that it was void. The trial court asked Appellant about the conditions of his parole as follows:

> [The Court]: But, you seem to be telling me that you determined on your own that these conditions did not apply to you.
>
> [Appellant]: That's correct, sir . . .

The right to be released on bail is conditioned upon the detainee's giving adequate assurance that he will appear when required. *See Stack v. Boyle*, 342 U.S. 1, 4–5, 72 S. Ct. 1, 3, 96 L. Ed. 3 (1951). Bail set at an amount higher than that reasonably calculated to fulfill this purpose is excessive under the Eighth Amendment. *Id*.

The burden is on the person seeking the reduction to demonstrate that bail is excessive. *See Maldonado v. State*, 999 S.W.2d 91, 93 (Tex. App.–Houston [14th. Dist.] 1999, pet. ref'd). The amount of bail is a matter resting within the sound discretion of the trial court and there is no precise standard for reviewing its determination. *Ex parte Pemberton*, 577 S.W.2d 266, 267 (Tex. Crim. App. 1979).

We conclude that the trial court did not abuse its discretion. Under these circumstances, the trial court could have no assurance that Appellant would appear. In fact, Appellant told the court that he considered himself unbound by the restraints the State of Missouri placed on him, and his statements before the trial court gave no indication that he had any more respect for, or intention to be bound by, the orders of a Texas court than he did for his parole requirements. In *Ex parte Durst*, 148 S.W.3d 496, 501 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd), the court held that bail of "well over" $300,000 was warranted in a case involving third degree felonies and a defendant with

---

have properly titled, registered, and insured my private automobile (1991 Dodge Dynasty), the Board of Probation & Parole, the Court, and the State of Missouri government are **FULLY ASSURED** I cannot ". . . *again violate the law*," totally eliminating any and all need for any and all parole supervision whatsoever, unless, of course, Missouri government is now a socialist police state ruled by fascism and absolute despotism. (emphasis in original)

At the hearing, Appellant took the position that the parole department must have agreed with him because he "duly noticed them" that he was going to engage in interstate travel and "they did not offer a response."

great wealth who had previously fled after posting a similar bail.[3] Bail in the ***Durst*** case was set by the appellate court at a total of $450,000, with extensive conditions. ***Id***. at 501.

Appellant does not have the financial resources that the defendant in ***Durst*** had. But the defendant in ***Durst*** did accept, or at least did not challenge on appeal, conditions of bail that were consistent with his not fleeing. ***Id***. By contrast, Appellant has offered no assurance that he will ever appear if released to bail, and he had violated the terms of his release from prison by leaving the State of Missouri. When faced with such a fact scenario, the trial court did not abuse its discretion by setting bail in the amount of $500,000. However, the trial court lacked the authority to require Appellant to post a cash bond. *See **Ex parte Deaton***, 582 S.W.2d 151, 153 (Tex. Crim. App. 1979). Therefore, we grant relief to the extent that Appellant may post a surety bond in the amount of $500,000 to secure his release. We sustain, in part, and overrule, in part, Appellant's tenth issue.

### CONCLUSION

We ***dismiss*** Appellant's first seven issues and those parts of his eighth and ninth issues that pertain to his first application for writ of habeas corpus. We overrule the parts of Appellant's eighth and ninth issues that pertain to his second application. We ***modify*** the bail amount set by the trial court to reflect that Appellant may post a surety bond and ***affirm*** the trial court's order as modified.

SAM GRIFFITH
Justice

Opinion delivered February 18, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

---

[3] The court said that because of the defendant's assets, a bail as high as one million dollars would not be oppressive in that case. The court lowered the bail, however, because the trial court, as a condition of bail, had required the defendant to pay for around the clock supervision by a peace officer, abide by a 7:00 p.m. curfew, and appear weekly in court. ***Durst***, 148 S.W.3d at 499, 501.